617 N.E.2d 1378 (1993)
187 Ill.Dec. 657
In re J.C., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
Florence Loveless, Respondent-Appellant).
No. 4-92-0375.
Appellate Court of Illinois, Fourth District.
August 12, 1993.
Kristen H. Fischer, Kristen H. Fischer Law Offices, Urbana, for respondent-appellant.
Thomas J. Difanis, State's Atty., Urbana, Norbert J. Goetten, Director State's Attys. Appellate Prosecutor, Robert J. Biderman, Deputy Director, Beth McGann, Staff Atty., Springfield, for petitioner-appellee.
Diana Lenik, Urbana, guardian and litem.
Justice LUND delivered the opinion of the court:
Fortunately, this appears to be a case of first impression. The mother and father of J.C. (age 13 at the time of the trial court hearing), even though divorced for years, deserve credit for what the trial judge termed "horrible damage" to this child. The father had custody for most of the 13 years. The mother insists that she be allowed to surrender her parental rights. The circuit court judge refused, but placed the child under custody of the Department of Children and Family Services (DCFS) and ordered certain visitation with the mother. The mother appeals from the refusal to accept the termination and the visitation order. The trial court's decision adequately portrays the facts with which the court was confronted.

TRIAL COURT DECISION
"THE COURT: Well, the neglect found in this case is the result of physical abuse to the Respondent Minor, by the Respondent Father, and neglect of the Respondent Minor by the Respondent Mother. Each of the respondent parents are [sic] unfit and unwilling, for reasons other than financial circumstances alone, to care for, protect[,] train[,] and discipline the Respondent Minor. Reasonable and appropriate services, indeed services beyond what is reasonable, have been attempted and have failed to correct the *1379 conditions which led to these findings. It's in the best interest of the Respondent Minor and of the public, that the following order be entered. The Respondent Minor's hereby adjudged a neglected minor, and is made a ward of the court. Custody of the Respondent Minor is hereby removed from the respondent parents and not to be returned to either of them, unless expressly ordered by the Court. Gary Morgan, Guardianship Administrator of [DCFS], and any successor in office, is appointed * * * guardian of the Respondent Minor, with power to place the Respondent Minor. The respondent parents are to cooperate fully and completely with the guardian, including but not limited to the following. In cooperation with the guardian, they are to establish and maintain a regular course of visitation with the Respondent Minor, so long as such visitation is deemed to be in the best interest of the Respondent Minor by the guardian. The parents have no option. That's not an invitation and that's not a request. That's a Court order. In the event that it's determined by the guardian and by the therapists and the mental health professionals and caseworkers, and everyone else working with [J.C.], that a course of visitation or a specific visitation is not appropriate at this time, that's fine. The guardian has the discretion to arrange no visitation or to suspend visitation or to cancel any visitation. However, that is to be the decision of the guardian, and the agencies and people with whom the guardian is working. It's not an option to the parents. All contact by the Respondent Mother and Father, with the Respondent Minor, be it personal, by telephone or written, is to be directly and immediately supervised by the guardian, or by a responsible party or agency designated by the guardian, to allow for family therapy, should that decision be made, that that's an appropriate course to follow. The respondent parents and the Respondent Minor[] are directed to cooperate fully and completely with the guardian, and are to attend each appointment, meeting, conference[,] or staffing scheduled by the guardian, with a social worker, caseworker, family aide specialist, agent, employee[,] or other person designated by the guardian. The respondent parents are to cooperate with any course of counseling or therapy recommended by the guardian. They are to refrain from changing their places of residence without giving at least fourteen days' prior notice to the guardian. And, they are to execute all authorizations for the release of information requested by the guardian. They are further to allow the guardian access to their homes for inspection of the same, upon request. Independent of the order entered this date and pursuant to the inherent authority of the Court, this case is continued for a review hearing to October the 27th, at 2:30 in this courtroom.
With regard to the request that I consider terminating the parental rights of the Respondent Mother, again, I will repeat the position taken by the Court the last time this was discussed. If the Respondent Mother wishes to knowingly, voluntarily[,] and intelligently execute a surrender of parental rights, she may do so. However, that does not mean that this Court will terminate her parental rights. The Court will not terminate her parental rights until the Court is convinced that that action is in the best interest of the Respondent Minor. I'm far from persuaded that that is in the best interest of Respondent Minor at this time. Unfortunately, the incredible course of abuse and neglect that this young lady has suffered throughout her childhood, at the hands of both parents, have left her, has left her[ ] with obvious emotional and mental health problems, with understandably very low self-esteem. And, even though she has been physically removed from the custody of her parents, she continues to be the scapegoat. She continues to be responsible for all of the shortcomings and all of the failures of her parents. And, undoubtedly, if I give them the opportunity, they will continue to blame her for everything that is wrong in their lives and for the horrible mess they have made of her *1380 life[] and[,] ultimately, I believe history will prove me correct, of the lives of her sisters. To accept the surrender of parental rights at this point, and terminate parental rights, would be to reinforce the blaming that the respondent parents are doing with [J.C.] and her residential placement at this point, with her having tremendous but understandable behavioral problems. To accept this surrender and terminate parental rights[ ] would be to reinforce in her mind[ ] the suggestion that she is worthless, that she is, bad, that she is beyond redemption and beyond help, and they say I'm a tough Judge, and would be to condemn this child. The Court will not be a party to that. It's the Court's responsibility to do everything within its power to correct the horrible damage that's been done to this child by these two people, not to reinforce it. It's one of the sad ironies of life, that parents have the power but not the rightf] to abandon their children. And children, in my judgment, have the right but not the power[] to abandon their parents. Your dream may well be fulfilled, ma'am, your parental rights may be terminated, but when it happens, it will happen only because I'm convinced that's in the best interest of your child, and will probably happen when she says she wants it to happen, not simply because you want it to happen. I reject the lies you have told. I reject the blame you have projected onto this child. And, I'm appalled at the damage you have done. I won't help you do it anymore."
As indicated by the trial court's decision, considerable thought and concern were given before determining the course to be taken. The best interests of this child were paramount, as well they should be. (See In re M.C. (1990), 197 Ill.App.3d 802, 805, 144 Ill.Dec. 214, 216, 555 N.E.2d 111, 113.) Evidence was sufficient, to find both J.C.'s parents unfit, and an order terminating parental rights would not have been against the manifest weight of the evidence. However, the trial court recognized the unlikelihood of adoption and, the necessity for doing everything possible to build the self-esteem of this child. We find his effort to be an example to other judges assigned to neglect cases.
As to respondent mother's claimed right to surrender for adoption, we agree completely with the trial court. A surrender of parental rights may be executed, but only a court order can terminate those rights as related obligations. (See Ill.Rev. Stat.1991, ch. 40, par. 1500 et seq.; ch. 37, par. 802-29.) Evidence indicates the trial court's refusal to terminate parental rights was not against the manifest weight of the evidence.
The trial court's order as to visitation presents a more difficult question. Applicable sections of the Juvenile Court Act of 1987 (Juvenile Act) (Ill.Rev.Stat.1991, ch. 37, par. 801-1 et seq.) are intended to protect children from neglect and abuse and to provide, where needed, supervised contact with a parent or parents. (See Ill.Rev.Stat. 1991, ch. 37, par. 801-2.) Parents' rights to their children are given procedural protection, and restrictions are provided before court termination of those parental rights may take place. (See Ill.Rev.Stat.1991, ch. 37, par. 801-5.) A surrender of rights usually results when the courts are petitioned by the State to terminate them. While the Adoption Act (Ill.Rev.Stat.1991, ch. 40, par. 1500 et seq.) provides for voluntary termination without findings of unfitness, the Juvenile Act principally comes into play where a finding of unfitness is suggested. See Ill.Rev.Stat.1991, ch. 37, par. 802-29.
Here, we have the abuse and neglect but, rather than a parent seeking to retain parental rights, we have a parent wanting to be free of those rightswhen adoption, for practical purposes, is not feasible.
Section 2-23 of the Juvenile Act (Ill.Rev. Stat.1991, ch. 37, par. 802-23) provides for orders of disposition in relation to wards of the court. Section 2-23(2) of the Juvenile Act (Ill.Rev.Stat.1991, ch. 37, par. 802-23(2)) provides for the possible orders of protection under section 2-25 of the Juvenile Act (Ill.Rev.Stat.1991, ch. 37, par. 802-25). Section 2-25(1)(e) of the Juvenile Act provides that a person may be required:

*1381 "To cooperate in good faith with an agency to which custody of a minor is entrusted by the court or with an agency or association to which the minor is referred by the court." Ill.Rev.Stat.1991, ch. 37, par. 802-25(1)(e).
We recognize that section 2-25(1)(e) and other provisions of section 2-25 of the Juvenile Act are worded to provide protection ensuring welfare of the minor, wherever the placement, and to provide protection from offensive action. Here, in contrast, the trial court was ordering action, not prohibiting it. However, section 2-25(1)(g) of the Juvenile Act provides that a person may be ordered: "To refrain from acts of commission or omission that tend to make the home not a proper place for the minor." (Ill.Rev.Stat.1991, ch. 37, par. 802-25(1)(g).) At least the word "omission" was considered by the legislature and would seem to suggest that one may be required to take affirmative action where appropriate. In adopting the Neglected Children Offense Act (Offense Act) (Ill.Rev.Stat.1991, ch. 23, par. 2359.9 et seq.), the legislature definitely established a requirement that parents have a duty to prevent dependency and neglect. Section 2 of the Offense Act provides in part:
"Any parent, legal guardian or person having the custody of a child under the age of 18 years, who knowingly or wilfully causes, aids or encourages such person to be or to become a dependent and neglected child as defined in section 1, who knowingly or wilfully does acts which directly tend to render any such child so dependent and neglected, or who knowingly or wilfully fails to do that which will directly tend to prevent such state of dependency and neglect is guilty of the Class A misdemeanor of contributing to the dependency and neglect of children. Instead of imposing the punishment hereinbefore provided, the court may release the defendant from custody on probation for one year upon his or her entering into recognizance with or without surety in such sum as the court directs. The conditions of the recognizance shall be such that if the defendant appears personally in court whenever ordered to do so within the year and provides and cares for such neglected and dependent child in such manner as to prevent a continuance or repetition of such state of dependency and neglect or as otherwise may be directed by the court * * *." Ill.Rev.Stat.1991, ch. 23, par. 2361.
The trial judge, in entering the order directing certain visitation, was seeking to aid J.C., who was dependent and neglected. If it becomes apparent that parental visitation is necessary in treatment of this disturbed childso be it. Visitation would be in cooperation with DCFS, the agency entrusted with J.C.'s custody, and would be for the purpose of assisting in the emotional needs and mental health of J.C.
We conclude that while the statutes do not specifically allow a court to require visitation by a parent with a child, such power is implied and exists. It would be sad if we could order a parent to provide financial support for a child, but could not order that parent to assist with the mental health and emotional needs of that child.
Affirmed.
STEIGMANN, P.J., and GREEN, J., concur.