644 N.E.2d 791 (1994)
268 Ill. App.3d 449
206 Ill.Dec. 23
In the Interest of B.J. & D.J., Minors. (The People of the State of Illinois, Petitioner-Appellee, Diana R. Barshney, Respondent-Appellant).
No. 4-93-0980.
Appellate Court of Illinois, Fourth District.
December 23, 1994.
*792 J. Steven Beckett, Kelly K. James, Beckett & Associates, P.C., Urbana, for appellant.
Thomas J. Difanis, State's Atty., Urbana, Norbert J. Goetten, Director State's Attys. Appellate Prosecutor, Robert J. Biderman, Deputy Director, David E. Mannchen, Staff Atty., Springfield, for appellee.
Scott A. Lerner, Lerner & Kirchner, Champaign, guardian ad litem.
Justice STEIGMANN delivered the opinion of the court:
In June 1991, the trial court found B.J. (14 years old) and D.J. (13 years old), the children of respondent, Diana R. Barshney, to be neglected and abused minors due, in part, to respondent's inappropriate and excessive use of force disciplining them. In January 1992, the court formally adjudicated the children wards of the court, placed them under the guardianship of the Illinois Department of Children and Family Services (DCFS), and removed them from respondent's custody. At that dispositional hearing, respondent appeared personally and by counsel, and the court explicitly ordered her to cooperate fully and completely with DCFS, including but not limited to establishing and maintaining a regular course of visitation with her children.
In March 1993, the State filed a petition for adjudication of indirect criminal contempt, alleging that respondent wilfully violated the court order by (1) failing to contact DCFS between June 1992 and March 1993, and (2) failing to visit the children during that same time span. In June 1993, the trial court conducted a hearing on that petition, found respondent had wilfully and contumaciously violated the court's orders, and found her guilty of indirect criminal contempt. In September 1993, the court conducted a sentencing hearing and ordered respondent to serve 180 days in jail, but provided that after she served the first 30 days, the court would conduct monthly remission hearings to determine whether she should serve the remainder of her sentence.
Respondent appeals, arguing that (1) the evidence did not support the trial court's finding that she was guilty of indirect criminal *793 contempt of court, and (2) the trial court abused its discretion by sentencing her to 180 days in jail.
We disagree and affirm.

I. BACKGROUND
At the June 1993 hearing on the State's contempt petition, a DCFS caseworker testified that since April 1992, she had been the primary DCFS caseworker involving respondent and her children. The caseworker stated that respondent declined visitation between June 1992 and March 11, 1993. During that time, if respondent had changed her mind at any time and wanted to see her children, all she had to do was call the caseworker in order to start visiting them again. Respondent also told the caseworker that she did not wish to have any contact with the caseworker or DCFS. The caseworker explained that respondent told her that she did not want to see her children "until `they began telling the truth'" about her. The caseworker also indicated that during the period of time in question, respondent's children did not want to visit with her.
Respondent testified that she suffers from osteoarthritis, which makes it difficult for her to get around. She admitted telling the caseworker that she did not want to see her children until "they told the truth." She further admitted that she told DCFS staff that if they "had anything to say to me, they could say it through my attorney." She also explained that she had been told her children did not want to visit with her, and during one counseling session with her son, he made that position quite clear.
Respondent acknowledged that her health did not prevent her from using a telephone. When pressed on cross-examination about what efforts she had made between June 1992 and March 1993 to comply with the court's orders, she finally admitted, "none whatsoever."
At the conclusion of the hearing, the trial court first noted that, "It's absolutely immaterial whether the children wanted to visit or not. The order was that the respondent mother was to visit." The court explained that the obligation to reach out to her children appropriately fell upon respondent because it was she who had physically abused them and caused their placement in foster care. The court further explained that it had ordered respondent to visit her children so that she could say, in effect, "`I love you, I don't blame you for anything that has happened, I take responsibility for it, I want to see you, I want to help you through this, and I want to help you through the pain you're enduring.'" (Compare In re J.C. (1993), 248 Ill.App.3d 905, 911, 187 Ill.Dec. 657, 660, 617 N.E.2d 1378, 1381 (affirming the trial court's requiring a parent to visit in the face of the parent's wish to give up parental rights).) The court concluded by finding respondent's conduct wilful and contumacious, holding that it constituted the indirect criminal contempt of court.

II. THE FINDING OF INDIRECT CRIMINAL CONTEMPT
On appeal, respondent challenges the trial court's finding her guilty of indirect criminal contempt as "an abuse of discretion." In People v. Townsend (1989), 183 Ill.App.3d 268, 270, 131 Ill.Dec. 741, 743, 538 N.E.2d 1297, 1299, this court held that a trial court's decision in finding a respondent guilty of indirect criminal contempt "will not be disturbed if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Thus, the proper inquiry on appeal is not whether the trial court abused its discretion in finding respondent guilty.
The elements of the offense of indirect criminal contempt are (1) respondent violated a court order, and (2) she did so wilfully. (Townsend, 183 Ill.App.3d at 270, 131 Ill.Dec. at 743, 538 N.E.2d at 1299.) This record clearly shows that the State proved respondent guilty of indirect criminal contempt beyond a reasonable doubt.
We further agree with the trial court that even if respondent was correct in her belief that her children did not want to visit with her, the wishes of the children would be immaterial. Court orders are not contingent upon the approval of third parties whom *794 those orders were intended to benefit, and even if those third parties later decide they do not wish the benefits of the court order, persons subject to that court order are in no way relieved from obeying it.
We note that in Townsend, the victim, L.B., had sought an order of protection against the defendant to keep him from entering her residence. Four months after the trial court entered the order of protection, L.B. had a change of heart and told the defendant that she had arranged for the order of protection to be lifted. The defendant subsequently entered L.B.'s residence with her permission (he claimed) and got involved in a fight with her. After the defendant's arrest, the State charged him with indirect criminal contempt for violating the court's order to stay away from L.B.'s residence. He contended at trial and on appeal that he could not have wilfully violated something he thought no longer existed. In response, this court wrote, "[W]e do not agree that a victim's invitation to violate the court's order frees [alleged] contemnors from conviction for wilful misconduct. A contrary result would lead to mockery of the powers granted the courts under the [Illinois Domestic Violence Act of 1986]." (Townsend, 183 Ill. App.3d at 271, 131 Ill.Dec. at 743, 538 N.E.2d at 1299.) We now reaffirm our holding in Townsend.

III. RESPONDENT'S CLAIM THAT THE SENTENCE WAS EXCESSIVE
Respondent next argues that her sentence of 180 days in jail constituted an abuse of discretion because it was disproportionate to the offense she committed. We disagree. The trial court is in the best position to select the most suitable sentence for a person found guilty of indirect criminal contempt, and this court will not disturb that determination absent an abuse of discretion. In re G.B. (1981), 88 Ill.2d 36, 43-44, 58 Ill.Dec. 845, 848-849, 430 N.E.2d 1096, 1099-1100.
At the sentencing hearing, the trial court stated the following:
"According to [the dispositional] report, * * * the children suffer from [respondent's] abandonment * * *. They are suffering right now. They are hurting. They are in an emotional jail. She can let them out. She has got the key. She just won't use it. So, I will lock her up until she decides she wants to let them out of their jail. That's why there is a point in using incarceration."
The trial court then sentenced respondent to conditional discharge for one year subject to the condition that she serve 180 days in jail. The court ordered the sentence to commence immediately for 30 days. Thereafter, the court would conduct remission hearings each month, providing respondent the opportunity to demonstrate her willingness to comply with the continuing court orders which she had been found in indirect criminal contempt for violating.
We conclude that no aspect of this sentence is excessive or an abuse of discretion. Instead, we deem the sentence fully justified by respondent's conduct and carefully calibrated by the trial court to achieve the desired results.
Last, we note that respondent argues that this court must carefully review the sentence imposed because courts of review "have long recognized the potential for abuse in exercising the summary power to imprison for contempt." In rejecting this argument, we note that no judicial abuse occurred in this case. Indeed, we commend the trial courtand the prosecutorfor taking the time and making the effort to pursue respondent's indirect criminal contempt. One would hope that courts need not order parents to visit their children, who were removed from their parents' custody because of physical abuse. Sadly, in the world in which we live, such orders sometimes are necessary, as this record reveals. Given the increasing evidence around us of family disintegration, as well as a general breakdown in values, morals, and judgment, trial courts in juvenile court proceedings may need to call upon their inherent power of contempt more frequently in order to motivate recalcitrant parents and other respondents to comply with court orders. This case clearly provides the lawful authority for such action, and juvenile courts *795 must not shrink from doing what is necessary to protect their wards.

IV. CONCLUSION
For the reasons stated, we affirm the judgment and sentence of the circuit court.
Affirmed.
KNECHT, P.J., concurs.
COOK, J., dissents.
Justice COOK, dissenting:
I respectfully dissent.
In J.C., a case where the mother wanted to surrender her parental rights after a finding of neglect, this court upheld an order that the mother establish and maintain a regular course of visitation with her child. We did not address the question of enforcing that order by contempt. We upheld the visitation order while acknowledging that neither the Juvenile Court Act of 1987 (Ill.Rev.Stat.1991, ch. 37, par. 801-1 et seq.) nor the Neglected Children Offense Act (Ill.Rev.Stat.1991, ch. 23, par. 2359.9 et seq.) specifically allowed a court to order such visitation. In J.C., we noted that the best interests of the child were paramount and the trial judge was seeking to aid the minor. "If it becomes apparent that parental visitation is necessary in treatment of this disturbed childso be it." J.C., 248 Ill.App.3d at 911, 187 Ill.Dec. at 660, 617 N.E.2d at 1381.
The visitation order in J.C. can be questioned. The parents had no option, they were ordered to have visitation, but DCFS could terminate visitation if DCFS determined that visitation was "not appropriate." It must be anticipated that the parents in J.C. would engage in visitation which was "not appropriate," in order to gain their purpose, and that such visitation would itself be harmful to the child. In the present case, visitation coerced by the court appears even less justifiable than in J.C.
Respondent's actions certainly warranted the criticism of the trial court. We frequently see these orders that respondent cooperate fully with DCFS, including establishing a regular course of visitation with the children. Violation of these orders, however, usually results in termination of parental rights, not contempt.
In my view, enforcement by contempt is an abuse of discretion, at least in the absence of exceptional circumstances not shown to be present here.
"A court order literally requiring an unwilling noncustodial parent to visit, on pain of contempt, is absurd and counterproductive. Apart from the enforcement problems the order would raise, visitation that resulted primarily from the noncustodial parent's desire to avoid contempt proceedings could hardly fulfill its usual beneficial functions for the child." (Novinson, "Post-Divorce Visitation: Untying the Triangular Knot," 1983 U.Ill.L.Rev. 121, 196 (1983) (hereinafter Novinson).)
The only legitimate reason for a visitation order is to benefit the child. The child should not "be made a martyr to the court's legitimate outrage" over the parent's conduct. (Novinson, at 192.) It is not appropriate to order a parent to perform parental duties when that performance will be difficult to measure, will result at best in an empty ritual, and most likely will be further harmful to the child. This is not to say that a parent may not be held responsible, for example, in dissolution of marriage cases, for the financial burdens resulting from missed visitations. Entirely different considerations apply where it is the child, or a custodial parent, who resists visitation. See Novinson, at 179, 192.