NO. 4-96-1016

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) McLean County

KENNETH O. PRIEST, ) No. 96CF182

Defendant-Appellant. ) 

) Honorable

) William T. Caisley,

) Judge Presiding. _________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

After a jury trial, defendant Kenneth Priest was convicted of home invasion, domestic battery, criminal trespass to a residence, and violation of an order of protection.  720 ILCS 5/12-11(a)(2), 12-3.2(a)(1), 19-4(a), 12-30(a)(1) (West 1996).  The trial court vacated the judgment of conviction for criminal trespass to a residence and entered judgment on the remaining three counts.  The court sentenced defendant to concur­rent terms of eight years' imprison­ment on the home invasion conviction, and 364 days' incarceration on both the domestic battery convic­tion and the conviction for violation of an order of protection.
  Defendant's appeal follows denial of his posttrial motions.  We affirm.

Peggy Priest is defendant's ex-wife, having been divorced from him since July 1995.  
On February 21, 1995, Peggy obtained an emergency order of protection against defendant for herself and her two children, also defendant's children. 
 The

emergency order expired on March 9, 1995, and the court issued a plenary order of protection effective March 9, 1995, until March 9, 1997.  Defendant had notice of the protective order. 

On February 9, 1996, Peggy rented a residence at 514 East Market Street in Bloomington.  Her name was the only one on the lease. 
 Peggy and the children were asleep when, around 2 a.m., she was awakened by a loud knocking at the front door. 
 Peggy opened the door to find defendant, whom she believed was drunk.  Peggy told defendant to go home, she shut the door, and went back to bed.

As Peggy drifted back to sleep, she saw defendant in her room.  She told him to go home.  Defendant asked Peggy if they could get back together, a proposition she refused.  Defen­dant became angry, climbed onto her bed, straddled her, and put his hands around her throat. 
 Defendant called her names and stated he wanted to have sex with her. 
 Defendant choked Peggy a couple of times.  He had his hands tight around her throat, hurting her, and cutting off her air.  Defendant slapped her across her head and punched her in the jaw.  Defendant told Peggy that he could kill her if he wanted to and that, if she continued to see her friend, he would kill him and beat her.  Peggy called the police, but defendant left her residence before they arrived.

Officer Fazio of the Bloomington police department arrived at Peggy's home sometime after 2 a.m. that night.  Peggy, crying hysterically, told Fazio defendant broke into her house and beat her. 
 Fazio observed "big, long, red streak marks *** finger marks" on both sides of Peggy's neck. 
 
He also noticed welts on her neck, redness on her left cheekbone, and swelling around her eyes.  Fazio found no signs of forced entry into the home, but discovered the back door unlocked.  

Defendant first argues he was not proved guilty beyond a reasonable doubt of violating the order of protection.  
The order provided:

"1.  With respect to [Peggy and the two 

children], [defendant] is prohibited from com-

mitting the follow­ing:  physical abuse***.

2.  [Peggy] is granted exclusive possession

 of the residence and [defendant] shall not 

enter or remain in the household or premises 

located at:  
404 N. West Street, LeRoy, 

Illinois.

* * *

3. a. [Defendant] is ordered to stay 

away from [Peggy] and other protected per-

sons***.

* * *

17.  [Defendant] is further ordered 

and/or en­joined as follows:  no contact by 

phone, mail or other­wise." 

Defendant contends he did not violate the order of protection because the address where Peggy resided on February 9, 1996, was different from the address identified in the order.  Defendant asserts he was prohibited only from going to the 404 N. West Street address.

The standard of review on appeal when considering whether a defendant has been proved guilty beyond a reasonable doubt is whether, after viewing the evidence in the light most favorable to the State, "'
any
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  (Emphasis in original.)  
People v. Eyler
, 133 Ill. 2d 173, 191, 549 N.E.2d 268, 276 (1989), quoting 
Jackson v. Virgin­ia
, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).
  A person vio­lates an order of protec­tion of which he has notice when he commits an act prohib­ited by a court in a valid order of protec­tion.  
People v. Gee
, 276 Ill. App. 3d 198, 200, 658 N.E.2d 508, 510 (1995).

Defendant was proved guilty beyond a reasonable doubt of violating the protective order.  It is irrele­vant that the residence where Peggy lived when defendant attacked her was not the residence identified in the order.  On February 9, 1996, defendant entered Peggy's residence, threatened her, hit and choked her.  The order of protection provided defendant (1) was prohibited from physically abusing Peggy; (2) was to stay away from her; and (3) was not to contact her by phone, mail, or otherwise.  Defendant violated these three provisions of the order, none of which are location-specific provisions.  Defen­dant was charged with violating the order of protection in that he physically abused Peggy, not that he only entered a specific residence.  "Neither victims nor courts need tolerate 
any
 viola­tion of an order of protection."  
Gee
, 276 Ill. App. 3d at 201, 658 N.E.2d at 510.

Defendant next contends his conviction for domestic battery should be vacated because the same conduct supported his convictions for both domestic battery and home invasion.  Defen­dant argues this violates the one act, one crime doctrine estab­lished in 
People v. King
, 66 Ill. 2d 551, 363 N.E.2d 838 (1977).

Defendant raises this issue for the first time on appeal.  The State argues since he neither objected at trial nor raised the claim in a posttrial motion, defendant has waived review of this issue.  An issue is waived on appeal unless a defendant both makes an objection at trial and raises the issue in a posttrial motion.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988).  The "plain error" doctrine is an exception to the waiver rule, permitting a court on direct appeal to take notice of plain errors and defects affecting a substan­tial right that were not brought before the trial court.  
People v. Owens
, 129 Ill. 2d 303, 316, 544 N.E.2d 276, 281 (1989); 134 Ill. 2d R. 615(a).  "[I]t 'is well established that in the inter­est of justice, a reviewing court may consider 
all
 questions which appear to be plain error or affect substantial rights of a party.'"  (Emphasis in original.)  
People v. Martin
, 119 Ill. 2d 453, 458, 519 N.E.2d 884, 886 (1988), quoting 
People v. Henderson
, 119 Ill. App. 2d 403, 405, 256 N.E.2d 84, 85 (1970).  When a defen­dant argues for the first time on appeal that he was improp­erly convicted of two offenses carved from the same act, the question is waived, but the review­ing court may determine whether plain error oc­curred.  
People v. Boastick
, 140 Ill. App. 3d 78, 84, 488 N.E.2d 326, 330 (1986); see also 
People v. Hausman
, 287 Ill. App. 3d 1069, 1071-72, 679 N.E.2d 867, 869 (1997) (plain error when error is so fundamental that defendant may have been denied a fair sentencing hearing).  Defen­dant has waived this 
issue as he did not raise it before the trial court.  However, we will address defendant's contention under the plain error doc­trine.

The legislature has expressed its intent that convic­tions and punishment not be pyramided.  "The court shall not impose consecutive sentences for offenses which were commit­ted as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective."  730 ILCS 5/5-8-4(a) (West 1996).  In 1988 the legislature added an exception to that language, language making consecu­tive sentences manda­to­ry in some cases.  Pub. Act 85-1030, §3, eff. July 1, 1988 (1988 Ill. Laws 200, 203-04).  The supreme court has also estab­lished antipyramiding rules:  (1) it is improper to carve more than one offense from the same act; and (2) when there are multi­ple acts, it is improper to convict a defen­dant of both an offense and a lesser included offense.  
People v. King
, 
66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45 (1977).  It could be argued that 
King
 was intended to address concurrent sentences and has no applica­tion to consecu­tive sentences.  See 
People v. Rodri­guez
, 169 Ill. 2d 183, 192-94, 661 N.E.2d 305, 309-10 (1996) (Heiple, J., spe­cially concur­ring).  Nevertheless, the supreme court has chosen to apply the 
King
 rules to mandatory consecutive sentenc­es, where the statuto­ry antipyramiding lan­guage quoted above has no effect.  
Rodri­guez
, 169 Ill. 2d at 186-87, 661 N.E.2d at 307.

When applying 
King
, a court first determines whether a defendant's conduct consisted of a single physical act or multi­ple acts.  Multiple convictions are improper when they are based on precise­ly the same physical act.  However, if the defendant committed multiple acts, the court determines whether any of the offenses are lesser included offenses.  If there are lesser included offenses, multiple convictions are improper.
  
Rodri­guez
, 169 Ill. 2d at 186, 661 N.E.2d at 306-07.  
An "act" is "any overt or outward manifestation which will support a differ­ent offense."  
King
, 66 Ill. 2d at 566, 363 N.E.2d at 844-45.

Applying 
King
 to these facts, we conclude defendant's conduct consisted of separate, multiple acts.  The fact that defendant unlawfully entered Peggy's home is an overt or outward manifestation supporting the home invasion conviction, a separate act from causing Peggy bodily harm, supporting the domestic battery conviction.  As long as defendant committed multiple acts, their interrelationship does not preclude multiple convic­tions.  
Rodriguez
, 169 Ill. 2d at 189, 661 N.E.2d at 308.  When multiple offenses arise from a "series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses," multiple convictions may be entered.  
King
, 66 Ill. 2d at 566, 363 N.E.2d at 845.

The indictment charged defendant with commit­ting home invasion in that:

"he knowingly and without authority en-

tered the residence of Peggy A. Priest, knowing 

or having reason to know that one or more 

persons were present and inten­tionally caused 

bodily harm, redness and swell­ing to the face 

of Peggy A. Priest, occurring within the resi­-

dence, when Kenneth Owen Priest was not a 

peace officer acting in the line of duty."

Defendant was charged with committing domestic battery in that "he knowingly without legal justification caused bodily harm, redness and swelling to the face of Peggy A. Priest, a family or household member, by hitting her in the face and choking her."

Under the charging instrument approach, domestic battery is a lesser included offense of home invasion.  All of the elements of domestic battery, as charged, are encompassed in home invasion, as charged.  Both the home invasion and the domestic battery charge allege defendant "caused bodily harm, redness and swelling to the face of Peggy A. Priest."  The domestic battery charge specifically provided that defendant caused redness and swelling to Peggy's face by "hit­ting her in the face and choking her."  However, this is a 
videlicet
, as it only restates in more specific language that which was previously stated in general language in the home invasion charge.  The home invasion charge set out the broad foundation of domestic battery, and "it is not necessary for the charging instrument to expressly allege all the elements of the lesser offense."  
People v. Hamilton
, 179 Ill. 2d 319, 325, 688 N.E.2d 1166, 1170 (1997).  

In this case, applying the 
King
 rules, it is necessary to determine whether domestic battery is a lesser included offense of home invasion.  Many of the cases defining lesser included offenses involve the question whether a jury should be allowed to consider a less serious offense that has not been sepa­rately charged but that is included in the charged offense.  See, 
e.g.
, 
Hamilton
, 179 Ill. 2d at 323, 688 N.E.2d at 1169.  Either the defense or the prose­cution may find it advan­tageous to seek an instruction on a lesser included offense in a particular case.  Differ­ent issues may be in­volved in decid­ing whether there has been improp­er pyra­mid­ing, or whether a jury should be in­structed on a less serious of­fense.  Neverthe­less, if changes are to be made in the commonly accept­ed defini­tion of lesser included offenses when applying the 
King
 rules, those changes should be made by the supreme court.

It has often been said that a lesser included offense is one that does not have any element not included in the greater offense.  
People v. Jones
,
 149 Ill. 2d 288, 292-93, 595 N.E.2d 1071, 1073 (1992); 
People v. Green
, 294 Ill. App. 3d 139, 149, 689 N.E.2d 385, 392 (1997) (greater offense must include 
every
 element of lesser offense).  A problem with that rule is that by creating very specific offenses the legislature may prevent those offenses from qualifying as lesser included offens­es even though they are virtu­al­ly identical to other offenses that would quali­fy.  Here, for example, it appears that simple battery would be a lesser includ­ed offense of home inva­sion.  Nevertheless, the legislature has the power to carve more than one offense from the same physical act.  See 
People v. Donaldson
, 91 Ill. 2d 164, 168-69, 435 N.E.2d 477, 479 (1982); 
Missouri v. Hunter
, 459 U.S. 359, 366, 74 L. Ed. 2d 535, 542, 103 S. Ct. 673, 678 (1983).  It will be a rare situa­tion for an offense to meet our definition of lesser includ­ed offense.  See H. Eisenberg, 
Multiple Punishments for the "Same Offense" in Illi­nois
, 
11 S. Ill. U.L.J. 217, 238 (1987).    

Domestic battery does contain an element not present in home invasion, that the victim was a family or house­hold member to the defen­dant.  720 ILCS 5/12-3.2 (West 1996); 725 ILCS 5/112A-3(3) (West 1996) (former spouses included).  Here, the home inva­sion count charged that defen­dant caused bodily harm to Peggy A. Priest, and the domestic battery count charged that defendant caused bodily harm to that same Peggy A. Priest.  Accord­ing­ly, in the facts of this case, it would have been impossible to have commit­ted the greater offense without neces­sarily commit­ting the lesser.  See 
People v. James
, 246 Ill. App. 3d 939, 944, 617 N.E.2d 115, 117-18 (1993).  The fact remains that domestic battery contains an element not present in home invasion.  The supreme court has employed a "broad founda­tion" test and a "main outline" test with lesser included offens­es, but those tests are used to deter­mine whether the lesser offense is de­scribed by a charging instrument.  
Hamilton
, 179 Ill. 2d at 326, 688 N.E.2d at 1170.  As discussed above, the fact that there are some language differences between the home inva­sion count and the domestic battery count does not prevent domestic battery from being a lesser included offense.  Under 
the existing definition of lesser included offens­es, however, we may not ignore the presence of an element simply because the two counts are other­wise very similar.  The home invasion count charged defen­dant with intentionally causing bodily harm, while the domestic battery count charged defendant with knowingly causing bodily harm, but an offense can be a lesser included offense when it is estab­lished by a less culpable mental state than the offense charged.  720 ILCS 5/2-9(a) (West 1996). 

There is another problem with finding a lesser included offense in this case.  The jury could not ratio­nally have found defendant guilty of domestic battery but not guilty of home invasion.  
Hamilton
, 179 Ill. 2d at 324, 688 N.E.2d at 1169.  There is no dispute that the domes­tic battery, if it oc­curred at all, occurred in Peggy's home.  Defendant does argue that he had implied authority to enter the home, but the only evidence he sought to introduce in support of that argument was properly excluded.  When the concern is whether offens­es are being pyra­mided it may not be significant whether a jury could ratio­nally find defendant guilty of the lesser offense yet acquit him of the greater.  Nevertheless, under existing law that fact will prevent the giving of an instruction on a lesser included of­fense.     

Defendant's final contention on appeal is that the trial court committed reversible error when it refused to allow defense counsel to elicit testimony from Peggy that on previous occasions she had allowed defendant into her residence while the order of protection was in effect.  Defendant asserts the line of questioning regarding the prior authorized entries is relevant to the home invasion charge.  At trial, defense counsel argued that because Peggy allowed defendant to violate the order of protec­tion by allowing him into her residence on occasions before Febru­ary 9, 1996, that resulted in her implied authority for defendant to enter her home.  The trial court rejected counsel's argument and did not allow the line of questioning because "[Peggy] cannot grant authority in the face of an order of protection because to do so would violate the order ***." 
 The trial court was correct in excluding Peggy's testimony regarding any prior occasions in which she may have allowed defendant into her home.

One element of the offense of home invasion requires that the defendant entered the dwelling place of another "without authority."  720 ILCS 5/12-11(a)(2) (West 1996).  The gravamen of the offense of home invasion is unauthorized entry.  
People v. Peeples
, 155 Ill. 2d 422, 487, 616 N.E.2d 294, 325 (1993).

Defendant contends the limited authority doctrine applies here and required the trial court to allow him to elicit Peggy's testimony regarding any prior authorized entry.  The limited authority doctrine provides that when a defendant is 
invited into a private residence by an occupant, the authoriza­tion to enter is limited.  No one who is 
granted 
access to a dwelling is an authorized entrant if, 
at 
the 
time 
entry 
was 
granted, defendant possessed the intent to perform a criminal act inside the dwelling.  In that situation, the consent to enter the dwelling is vitiated because the true purpose for entry exceeded the limited authorization granted.  
People v. Bush
, 157 Ill. 2d 248, 253-54, 623 N.E.2d 1361, 1364 (1993).

The limited authority doctrine is inapplicable in this situation.  The doctrine applies only 
after
 a defendant was invited into or granted access to a dwelling.  Even when a defendant, on previous occasions, was permitted under certain circumstances to enter a dwelling without knocking, if defendant was not invited into the house on a particular occasion, suffi­cient evidence existed that defendant had no authority to enter the dwelling on that occasion, supporting a conviction of home invasion.  
People v. Donnelly
, 226 Ill. App. 3d 771, 773-75, 589 N.E.2d 975, 976-77 (1992).  Here, Peggy never invited defendant into her home on February 9, 1996.  In fact, the evidence at trial un­equivocally demonstrated that on that night, Peggy told defen­dant to go home, and she shut the door without allowing him into the residence.  Sometime after that he gained entry to the house, without Peggy's authorization, and proceeded to abuse her. 
 Moreover, any evidence showing that on previous occa­sions Peggy allowed defendant into her home despite the order of protection is not relevant in determining whether Peggy autho­rized defendant to enter her home on February 9.  Evidence is relevant if it has "any tendency to make the exis­tence of any fact in consequence to the determination of the action more or less probable than it would be without the evi­dence."  
Peeples
, 155 Ill. 2d at 455-56, 616 N.E.2d at 309.  Any evidence Peggy may have allowed defendant into her home on prior occasions did not make more or less probable the issue of whether she allowed defendant into her home on the night in question.  The evidence clearly showed that, on that night, she explicitly refused entry by defendant.  Defendant presented no evidence Peggy authorized him to enter her home 
on
 
that
 
night
.

In a final effort, defendant attempts to rely on the recent supreme court decision of 
People v. Reid
, 179 Ill. 2d 
297, 
688 N.E.2d 1156 
(1997).  In 
Reid
, a defendant did not commit home invasion when he entered a dwelling a protective order prohibited him from entering, but of which he was an otherwise lawful tenant when he still paid rent for the dwelling.  
Reid
, 179 Ill. 2d at 316, 688 
N.E.2d at 1165
.  
Reid
's holding concerned the interpre­ta­tion of the phrase dwelling "of another" of the home invasion statute, not the "without authority" provision involved in the present case.  Fur­ther­more, even if the trial court premised its exclu­sion of the previous entry evidence on the fact that the order of protec­tion alone prohibited defendant's entry, the trial court was correct in not allowing the evidence.  See 
In re B.J.
, 268 Ill. App. 3d 449, 452, 644 N.E.2d 791, 793-94 (1994) (persons subject to a court order are not relieved from obeying it even if the third party whom the order protected decides he does not want the benefits of the order).

We affirm defendant's conviction and sentences for home invasion, domestic battery, and violation of an order of protec­tion.

Affirmed.

 GARMAN, P.J., and STEIGMANN, J., concur.