492 So.2d 1136 (1986)
Carl William HALLMAN, Petitioner,
v.
STATE of Florida, Respondent.
No. 86-1309.
District Court of Appeal of Florida, Second District.
August 8, 1986.
*1137 James N. Casesa, P.A., St. Petersburg, for petitioner.
Jim Smith, Atty. Gen., Tallahassee, and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for respondent.
PER CURIAM.
Carl Hallman seeks review by certiorari of a decision of the circuit court sitting in its appellate capacity. The question presented is whether two or more convictions for the offense of driving while license suspended, section 322.34, Florida Statutes (1985), may result from a single uninterrupted episode of driving solely because that episode spans different jurisdictions or involves different police officers acting independently of one another. The circuit court found no bar to multiple prosecutions under the facts of this case. We grant the petition for writ of certiorari and quash the decision below.
On August 8, 1984, Hallman's automobile was involved in two separate incidents in Pinellas County. There is no evidence to refute the contention that Hallman alone was responsible for both, or that the two incidents occurred during a single driving episode. At about 3:30 P.M. on that date an officer of the St. Petersburg Police Department discovered Hallman's automobile stopped at an intersection in that city, with Hallman asleep behind the wheel. Following a records check which indicated that Hallman's driving privileges were under suspension, he was cited for a violation of section 322.34. Unknown to the St. Petersburg officer, Hallman's vehicle had been involved in an accident only a short time before, some five miles distant in the neighboring city of Pinellas Park. Though the driver had left the scene of that accident, witnesses obtained the tag number of the car. A second citation for violating section 322.34 was mailed to Hallman. Hallman challenged the ability of the state to try him twice for what he argued was one continuing offense.
The circuit court, affirming Hallman's convictions, expressed concern that, under Hallman's reasoning, one might drive from Pensacola to Key West, receiving a ticket in each county through which he passed but successfully escaping prosecution for all but the first. The court went on to find the state's position equally implausible: "a police officer could follow a driver for ten blocks and give the driver ten citations." The court found a "happy balance" which would permit duplicative citations, even when the driving is continuous, if the second *1138 citation "is given by a different law enforcement agency, in good faith and without knowledge of the first citation." The court reasoned that this would not violate constitutional proscriptions against double jeopardy because there is no "identity of parties."
For several reasons, we disagree with the circuit court's reasoning. First, we question the use of the term "good faith." Although good faith has relevance in some fourth amendment controversies, a person may be charged only once for a single crime, regardless of the sincerity of the policeman who arrests him a second time. Second, contrary to the position taken by the circuit court, there was an identity of parties in the two prosecutions underlying this case. The arresting officer is not a "party" to a criminal prosecution, which is essentially a matter between the accused and the state. Last, neither hypothetical advanced in the circuit court's opinion should result in the untenable results that the court feared.
A "continuing offense" is a "continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy." United States v. Midstate Horticultural Co., 306 U.S. 161, 166, 59 S.Ct. 412, 414, 83 L.Ed. 563 (1939). In State v. Stiefel, 256 So.2d 581 (Fla. 2d DCA 1972), this court applied the "continuing offense" concept to traffic offenses, holding that driving under the influence of alcohol was a continuing offense. The issue in Stiefel was whether a conviction for driving under the influence presented a double jeopardy bar to a subsequent charge of D.U.I. manslaughter arising out of the same episode. We held that it did not, on the theory the latter offense was an "instant offense" occurring at one time and one place only, whereas the former, as a continuing offense, was consummated at each and every point along the line. Where two continuing offenses, as opposed to one continuing offense and one instant offense, overlap, the result should be different than that reached in Stiefel. See, e.g., State v. Peavey, 326 So.2d 461 (Fla. 2d DCA), cert. denied, 336 So.2d 1184 (Fla. 1976) (two charges of possession of marijuana).
Although there appear to be no Florida cases directly on point, other jurisdictions have refused to allow multiple convictions for traffic offenses such as driving under the influence or driving with a suspended license in situations similar to that faced by Hallman. See, e.g., State v. Licardi, 132 Conn. 220, 43 A.2d 450 (1945); People v. Dillingham, 111 Ill. App.2d 161, 249 N.E.2d 294 (1969); Boyle v. State, 241 Ind. 565, 170 N.E.2d 802 (1960). Confronted with separate charges where the offender had crossed jurisdictional lines, the court in Licardi reasoned that, "[I]f the offense is divisible, it would be as much so upon the basis of each street over which or of each block in which the car was operated as upon that of each of the two towns." When an illegal act, as here, is ongoing, there is simply no practicable place to draw the line between one charge and several. "Where the legislature has not explicitly stated the unit of an offense, the doubt will be judicially resolved in favor of construing a single transaction as a single offense." Dillingham, 249 N.E.2d at 297.
On the other hand, if anything occurs to disrupt the driver in his unlawful course, and yet he persists undeterred, multiple convictions may result. See, e.g., State v. Vogel, 4 Conn. Cir. Ct. 102, 225 A.2d 831 (1966) (intervening stop by police); State v. Metcalf, 166 N.J. Super. 46, 398 A.2d 1320 (1979) (defendant resumed driving after release). Every time a drunk driver, or one whose driving privilege has been taken away, makes the decision to assume control of his vehicle, he has broken the law, whether his intentions are to journey to Key West or to visit the corner store.
For these reasons, we quash the decision of the circuit court with directions to order the county court to vacate Hallman's second conviction for driving with a suspended license.
GRIMES, A.C.J., and SCHOONOVER and HALL, JJ., concur.