THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL COBERN, Defendant-Appellant.

First District (4th Division)   No. 1—91—1694

Opinion filed September 30, 1992.

Rita A. Fry, Public Defender, of Chicago (Renee C. Graham, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Christopher Daddino, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant was convicted of armed robbery and aggravated battery (Ill. Rev. Stat. 1989, ch. 38, pars. 18—2, 12—4(b)(8)), then sentenced to concurrent, respective terms of eight and four years' imprisonment. On appeal defendant contends that the multiple convictions were improper because they were based on the same physical act.

We affirm the judgment of the trial court.

BACKGROUND

The record shows that the incident giving rise to the charges in this case occurred in the early morning hours of December 1, 1990, near California Avenue and Point Street in Chicago. At trial, Mauro Bustamante testified that he was returning from work about 4 a.m. that day, and as he walked in that area towards his home, he saw defendant and two other men standing on the sidewalk. He had previously seen defendant in the neighborhood, but he did not know him by name. As Bustamante continued on his way, he observed defendant walk away from the others, and reappear from behind a building which was just beyond him. Defendant was drinking from a beer bottle which he held in his right hand and came up to Bustamante's side. Defendant hit him in the head with the bottle, which broke and cut Bustamante in the right temple. Bustamante attempted to flee, but defendant followed him as he ran and put his hand on the sports bag Bustamante was carrying. Bustamante had a Walkman on the right side of his leg and the headphones around his neck, and when defendant grabbed hold of the bag, which contained clothing and a paycheck, Bustamante let it go and the Walkman also fell to the ground.

Bustamante ran to his house, about 40 feet away, and once inside, he realized that he was bleeding. He then contacted his cousin, who accompanied him to the police station which was located in the neighborhood. Defendant chased them en route, but Bustamante managed to register his complaint and then toured the neighborhood with two police officers. He saw defendant on the street near the area where the attack took place and pointed him out to the officers.

On cross-examination Bustamante denied that the incident evolved from a gang dispute or that he was a member of any gang.

He allowed, however, that his cousin was a member of the Latin Kings. He further stated that no words were spoken during the entire encounter with defendant.

Chicago police officer Richard Rennes testified that he arrested defendant after Bustamante pointed him out on the street. At that time he observed that defendant had a white rag wrapped around his hand, and that the rag had fresh bloodstains on it. At the station he saw that defendant had small, fresh cuts in the web area of his right hand and another cut on the palm of his hand. During cross-examination he stated that the arrest occurred about one-half hour after the offense reportedly occurred, and that he did not recover any beer bottles from the scene nor any of the property allegedly taken from the victim.

Defendant testified that he knew Bustamante from the neighborhood, and asserted that Bustamante "hung out" with his cousins and other gang members in that area. He recalled that he left a bar with two friends about 3:15 that morning and went home. The windows of his home had been broken by gang members two days before that, and when he arrived home on this occasion, he fought with his brother, who pushed him against the glass causing him to cut his hand. After that defendant left his home and walked towards California and Point to call his girl friend. He was arrested in that area, but denied assaulting Bustamante or taking any of his property.

The State called Detective Lawrence Holec in rebuttal. Holec testified that he spoke with defendant after his arrest and in that conversation defendant denied any involvement in the alleged crime, and attributed the cuts on his hand to a fall in the house after wrestling with his girl friend. Defendant testified in surrebuttal that he did not recall speaking to that particular detective, that he had been drinking for six hours prior to his arrest, and that he had consumed quite a bit of alcohol during that period of time.

The trial court found defendant guilty of both offenses. In announcing its decision, the court stated that the evidence showed that defendant was armed with a beer bottle and smashed it on the victim's head. The gash sustained by the victim was corroborated by the testimony of the police officer. The court further found that the incident took place on a city street and that defendant grabbed the victim's property while he was armed and as he was chasing the victim.

OPINION

On appeal, defendant disputes the multiple convictions entered by the court. He maintains that the force used to establish the armed

robbery conviction, *i.e.*, striking the victim in the head with a bottle, also caused the bodily injuries referred to in the aggravated battery charge. Thus, he asserts that both offenses were carved from the same physical act and his conviction of aggravated battery must be vacated. The State responds that the evidence established two separate acts and urges this court to uphold the multiple judgments entered by the trial court.

■ The seminal case concerning the propriety of multiple convictions from a single physical act is *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838. In that case, the supreme court held that multiple convictions and concurrent sentences were proper where defendant committed several acts despite the interrelationship of those acts; and defined "act" in this context as any overt or outward manifestation which would support a different offense. (66 Ill. 2d at 566.) More recently the supreme court reviewed *King* and its progeny and concluded as follows:

" '[I]f a defendant commits more than one criminal act in an episode or transaction, he may be prosecuted for more than one offense unless the charges involve precisely the same physical act. If the physical acts are distinct, the defendant can be convicted of both, but only concurrent sentences can be imposed. If exactly the same physical act does form the basis for more than one offense, a defendant may still be prosecuted for each offense, but only one conviction and sentence may be imposed.' [Citation.]" *People v. Segara* (1988), 126 Ill. 2d 70, 77, 533 N.E.2d 802.

In deciding whether defendant's conduct in a particular instance constituted separate acts or merely formed distinct parts of a single physical act, reviewing courts have considered the identity of the victim and location, the similarity of the acts and lack of a substantial time interval or intervening act between them, and prosecutorial intent as reflected in the wording of the charging instrument. *People v. Baity* (1983), 125 Ill. App. 3d 50, 465 N.E.2d 622.

In this case, the record discloses one victim, and action which took place in the same general location within a short period of time. Additionally, however, the victim testified to distinct acts by defendant which were separated by an interval of time even though this period was brief. See *People v. Meyers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535.

Bustamante testified that while he was walking on a public sidewalk defendant came up to him, then hit him in the right temple with a beer bottle. The bottle burst on impact, cut his head and caused in-

jury to him. Clearly this evidence, which was accepted by the trial court, was sufficient to establish defendant's commission of the offense of aggravated battery as charged. Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(8); *People v. Pugh* (1987), 162 Ill. App. 3d 1030, 516 N.E.2d 396.

■ The information also alleged that defendant had committed armed robbery in that he, by use of force and by threatening the imminent use of force while armed with a dangerous weapon, took personal property from the person and presence of the victim. Bustamante testified that after defendant struck him on the head and injured him, he fled and was pursued by defendant, who then grabbed the bag the victim was carrying. The trial court opined that the robbery may have been an afterthought by defendant, but nevertheless found that the armed defendant had grabbed the victim's bag while in pursuit and that he was also proved guilty of armed robbery.

The standard for reviewing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." (Emphasis in original.) (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) Applying that standard to the case at bar, we find sufficient evidence to support the determination entered by the trial court. Although there was but one victim, and the action took place in the same locale, the record also shows a brief interval between acts, and the charging instrument reflected the State's intention to charge defendant with separate offenses based on them. Bustamante's testimony disclosed the hit on the head with the beer bottle causing injury which completed the aggravated battery, then pursuit by defendant and the taking of his property by defendant while he was still armed. In our judgment, these distinct acts support the multiple convictions and concurrent sentences entered by the trial court (see *People v. Higgins* (1979), 71 Ill. App. 3d 912, 390 N.E.2d 340; see also *People v. Olmos* (1978), 67 Ill. App. 3d 281, 384 N.E.2d 853) in conformity with the rules for same set forth in *King* and affirmed in *Segara. People·v. Hairston* (1990), 207 Ill. App. 3d 674, 566 N.E.2d 343.

The judgment of the circuit court of Cook County is therefore affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.