632 So.2d 1106 (1994)
Lee A. MICHIE, Appellant,
v.
STATE of Florida, Appellee.
No. 92-00583.
District Court of Appeal of Florida, Second District.
March 2, 1994.
*1107 James Marion Moorman, Public Defender, and Megan Olson, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Stephen A. Baker, Asst. Atty. Gen., Tampa, for appellee.
FRANK, Chief Judge.
Lee A. Michie appeals from judgments and sentences entered after a jury pronounced him guilty of two counts of simple DUI and two counts of driving with a suspended license. We affirm in part and reverse in part.
On July 28, 1990, at approximately 1:45 a.m., Michie was involved in an automobile accident in which he and two others were injured. Michie was rushed by helicopter to Tampa General Hospital. The flight nurse described Michie as belligerent and reeking of alcohol. In her opinion, Michie was intoxicated. Michie admitted to the registered nurse on duty at Tampa General Hospital upon arriving that he had been drinking prior to the accident. Blood was withdrawn from Michie that morning  once at 3:10 a.m. for medical purposes, and again at 6:00 a.m. at the behest of law enforcement. The medical sample revealed a .196 blood alcohol level; an analysis of the legal sample produced a blood alcohol level of .110. The state charged Michie with two counts of driving under the influence causing serious bodily injury, and two counts of driving with a suspended license causing serious bodily injury. The jury, rejecting the injury element of each count, convicted Michie of the lesser included offenses of simple DUI and driving with a suspended license. Upon those convictions the court entered four separate judgments and imposed concurrent terms of nine months' incarceration for the simple DUIs to be followed by concurrent one year terms of probation for driving with a suspended license.
Michie urges that the state was not entitled to rely upon the implied consent statute's presumption of impairment and also that his convictions and sentences violate the Fifth Amendment's guarantee against multiple punishments for "continuing offenses." In his first point, he correctly contends that the trial court erred in permitting the test results of the legally compelled blood draw revealing the .110 blood alcohol level.[1] It is evident from the record that the state introduced that result as presumptive evidence of impairment but failed to establish substantial compliance with the relevant regulations adopted by HRS pursuant to the mandate of section 316.1933(2)(b), Florida Statutes (1991).[2] In light of this deficiency, we agree *1108 that the presumption afforded in section 316.1934(2)(c), Florida Statutes (1991), should not have been available to the state.
Our review of the record has, however, revealed a basis for affirming the trial court. In addition to the inadmissible blood alcohol evidence, the state introduced the results of the medically compelled blood test. In State v. Quartararo, 522 So.2d 42 (Fla.2d DCA), rev. denied, 531 So.2d 1354 (Fla. 1988), we interpreted State v. Strong, 504 So.2d 758 (Fla. 1987), to permit test results without regard to the requirements of section 316.1933, provided that the blood sample is drawn for a medical purpose by a qualified healthcare professional, and provided further that the state establishes the traditional predicate for admissibility: the test's reliability, the examiner's qualifications, and the meaning of the test results. See Robertson v. State, 604 So.2d 783, 791 n. 13 (Fla. 1992). Having reviewed the record of these proceedings, we conclude for the following reasons the trial court properly allowed the .196 blood-alcohol reading. First, in compliance with the implied consent law, a qualified healthcare provider extracted Michie's blood. See § 316.1933(2)(a), Fla. Stat. (1991). Second, that sample was tested by a medical lab technician licensed to conduct and interpret "serum blood tests," which, according to the testimony of experts in the field of toxicology, accurately measure the concentration of alcohol in a person's blood serum. As explained by the experts, although "[s]erum alcohol concentration is not the same as a blood alcohol concentration and serums are typically in the range of about 20 percent higher than a corresponding whole blood measurement," a serum measurement of .196 still represents a blood alcohol level well above .10, falling somewhere between .145 and .178. It follows that competent evidence established that Michie operated his vehicle with an unlawful blood alcohol level. Accordingly, we have determined beyond a reasonable doubt that the evidence of questionable admissibility did not affect the verdicts rendered.
Turning our attention to the second question, we find we must vacate one conviction and sentence for each offense. In reliance upon Hallman v. State, 492 So.2d 1136, 1138 (Fla. 2d DCA 1986), Michie argues, and we agree, that traffic offenses such as driving under the influence or driving with a suspended license are "continuing offenses" permitting a single conviction per episode. See Boutwell v. State, 631 So.2d 1094 (Fla. 1994) (regardless of the number of injured persons, there can be only one conviction arising from a single accident). The trial court should therefore have merged the two counts of each offense. Separate convictions and penalties, in these circumstances, violate double jeopardy.
Accordingly, we reverse one conviction each of simple DUI and driving with a suspended license, and vacate the judgments and sentences entered on those counts; in all other respects we affirm.
DANAHY and SCHOONOVER, JJ., concur.
NOTES
[1] Section 316.1934, Florida Statutes (1991), provides that 0.10 percent or more by weight of alcohol in the blood shall be prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his normal faculties were impaired.
[2] Section 316.1933(2)(b), Florida Statutes (1991), uses the following language:

A chemical analysis of the person's blood to determine the alcoholic content thereof must have been performed substantially in accordance with methods approved by the Department of Health and Rehabilitative Services and by an individual possessing a valid permit issued by the department for this purpose. The Department of Health and Rehabilitative Services may approve satisfactory techniques or methods, ascertain the qualifications and competence of individuals to conduct such analyses, and issue permits which will be subject to termination or revocation at the discretion of the department.