FIFTH DIVISION

December 31, 1997

No. 1-95-2142

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. ) No. 92 CR 16860

)

DARWIN GREEN, ) Honorable

) 
James A. Zafiratos
,

Defendant-Appellant. ) Judge Presiding.

JUSTICE HOURIHANE delivered the opinion of the court:

On June 4, 1992, defendant Darwin Green was involved in an automobile accident which killed Florence McCaffray and seriously injured two other members of her family.  Defendant was indicted on two counts of reckless homicide and three counts of aggravated driving under the influence of alcohol.  A jury trial followed, and defendant was found guilty as charged.  Defendant was thereafter sentenced to a single seven-year prison term for reckless homicide as well as to a concurrent three-year prison term for each count of aggravated driving under the influence of alcohol.

On appeal, defendant contends that (1) the jury was misled into believing it could presume his legal intoxication pursuant to certain blood serum-alcohol concentration test results, (2) the State was improperly allowed to elicit testimony interpreting the discrepancies between his various alcohol concentration test results, and (3) one of his convictions for aggravated driving under the influence of alcohol violates the "one act-one crime" rule.  For the reasons that follow, we reverse defendant's convictions and remand this matter for a new trial.

BACKGROUND

Paul McCaffray was driving south on River Road through River Grove, Illinois, late in the evening on June 4, 1992.  With him was his wife, Margaret, his six-year-old daughter, Julianne, and his mother, Florence.  McCaffray testified at trial that as he changed lanes in anticipation of making a left-hand turn onto Grand Avenue, "[he] saw two headlights coming directly at [him] at what appeared to be a relatively high rate of speed."  A collision followed.  Florence McCaffray was killed instantly; McCaffray and his wife were seriously injured.

John Mancini was traveling north on River Road that evening.  Mancini testified that he first noticed defendant upon pulling alongside him at the intersection of Fifth Avenue and Hemingway Drive; defendant was stopped "on an angle" approximately 40 feet behind that intersection.

Mancini further testified that as he drove north on Fifth Avenue and then later on River Road, defendant twice came "right up on [his] bumper and then backed off" before veering into, and out of, the southbound traffic lanes.  Defendant crossed over into the southbound traffic lanes on four separate occasions; he collided with a southbound car the fourth and final time.

River Grove police detective Keith Aller testified that he was dispatched to the accident scene minutes after the collision, which he described as two cars "head to head ***" in the left-hand, southbound traffic lane of River Road.  Detective Aller found defendant was "semi-conscious" with several head injuries; he also smelled of alcohol.

Emergency medical technician John Paczesny arrived shortly thereafter.  He, too, noticed that defendant smelled of alcohol.

Detective Aller secured the personal property within defendant's car, which included a money clip, a portfolio, some jewelry, a pager and a large, "picnic-type cooler;" no alcohol was found.  Detective Aller then drove to Gottlieb Memorial Hospital, where nurse Patrick Coleman took a series of blood and urine samples from defendant, certain of which were sealed and inventoried by Detective Aller as evidence.

Dr. Joyce Rosenfeld, an emergency room physician at Gottlieb, saw defendant upon his admission, and as a matter of course, ordered a series of tests, including a blood serum-alcohol concentration test.  Dr. Rosenfeld testified that the result of that test indicated an alcohol concentration level of 0.114 gram per 100 milliliters, which she explained, meant "that the person is intoxicated above a level that would be a legal blood[-alcohol] limit."  Dr. Rosenfeld further testified that a blood serum-alcohol concentration level between 0.50 and 0.10 gram per 100 milliliters "shows signs of intoxication," whereas a level of 0.10 or greater means "under the influence ***."

Thereafter, the parties stipulated that one of the series of blood samples taken from defendant upon his admission to Gottlieb was forwarded to Metpath Laboratories, a private laboratory retained by Gottlieb.  Like Gottlieb, Metpath also subjected defendant's blood serum to an alcohol concentration test.  However, the result of that test, 0.124 gram per 100 milliliters, was somewhat higher than that reported by Gottlieb.

Laura LeDonne-Draka, a forensic scientist with the Illinois State Police, testified that she also analyzed a sample of defendant's blood.  She, however, did not analyze defendant's blood serum as had Gottlieb and Metpath; rather, she analyzed defendant's whole blood, which according to the result of her test, contained an alcohol concentration level of 0.079 gram per 100 milliliters.  LeDonne-Draka stated that an alcohol concentration test of blood serum "would give a higher [alcohol concentration] reading" than would an identical test of whole blood.
(footnote: 1)  Indeed, according to LeDonne-Draka, an alcohol concentration test which analyzes blood serum will produce alcohol concentration levels approximately 16% higher than those which analyze whole blood, thus necessitating the use of a conversion factor to obtain equivalent whole blood-alcohol concentration levels.

Tiffany Bailey then testified on behalf of defendant, who she described as a "friend of the family."  According to her, defendant would often visit her at her job, and did so again on evening of the collision following his softball game.  Defendant remained with her for about an hour, during which time she noticed nothing unusual about him.

Defendant testified that some time after he finished work on June 4, 1992, he drove to a friend's house, stopping first to purchase beer.  When defendant arrived at his friend's house, he brought two bottles of beer inside.  Defendant stated that he drank half a bottle before leaving with his friend for a softball game.

Defendant thereafter participated in the softball game with no ill effects.  Defendant also stated that he did not have another drink until the game ended at 8:30 p.m., at which time he had another beer.  After finishing that beer, defendant drove his friend home.

Defendant met Bailey later that evening.  According to him, they conversed for a half-an-hour before he left.  Defendant stated that as he drove home, north on Fifth Avenue and then later on River Road, he was "feeling" for his cellular telephone and "looking at the road" up until the moment he collided with a southbound car.

Defendant further testified that he was not affected by the alcohol he consumed that evening, and that he had not consumed any other alcoholic beverages.  He also stated that he did not recall ever crossing into any southbound traffic lanes nor driving close to the rear of another car.

Thereafter, defendant called Dr. Robert M. Moriarty, a chemist at the University of Illinois at Chicago; Dr. Moriarty had reviewed the alcohol concentration test results from Gottlieb, Metpath and the Illinois State Police.  Like LeDonne-Draka, Dr. Moriarty testified that alcohol concentration tests performed on blood serum produce different results than do the same tests performed on whole blood; namely, alcohol concentration levels approximately 16% higher.  Using a conversion factor of 1.16, Dr. Moriarty converted the Gottlieb and Metpath blood serum-alcohol concentration test results into respective whole blood equivalents of 0.0982 and 0.1068 gram per 100 milliliters.

Dr. Moriarty further testified that the wide range of alcohol concentration test results precluded any reliance upon them.  Indeed, according to Dr. Moriarty, such a wide range of results rendered each mutually exclusive of the others, and therefore, unreliable and incompatible.

On rebuttal, LeDonne-Draka stated that the various alcohol concentration test results were not incompatible, in light of the differences between the tests that were performed and the instruments that performed those tests.  However, LeDonne-Draka also admitted that she was unfamiliar with the instruments used by Metpath and Gottlieb to determine blood serum-alcohol concentration levels.

After hearing all the evidence and arguments of counsel, the jury found defendant guilty as charged.

DISCUSSION

I
.

Defendant now contends that a "series of errors conspired to mislead the jury" into believing they could presume he was legally intoxicated based upon the results of two blood serum-alcohol concentration tests, each of which reported an alcohol concentration level of greater than 0.10.

A trial error is of such magnitude as to require the reversal of a defendant's conviction if there is a reasonable probability the error may have contributed to that conviction.  
People v. Fields
, 170 Ill. App. 3d 1, 13, 523 N.E.2d 1196 (1988); 
People v. Merideth
, 152 Ill. App. 3d 304, 319, 503 N.E.2d 1132 (1987). 

In a prosecution for aggravated driving under the influence, a trier of fact may presume a defendant is under the influence of alcohol if that defendant's alcohol concentration, at the time of the incident, was 0.10 or greater.  625 ILCS 5/11-501.2(b)(3)(West 1996).  The same is true in a prosecution for reckless homicide (625 ILCS 5/11-501.2(b)(3)(West 1996); 720 ILCS 5/9-3(c)(1)(West 1996)); an alcohol concentration of 0.10 or greater also entitles a trier of fact to further presume that defendant acted recklessly, "unless disproved by evidence to the contrary."  730 ILCS 5/9-3(b)(West 1996).

Section 11-501.2(a)(5) of the Illinois Vehicle Code defines "alcohol concentration" in terms of "grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath."  625 ILCS 5/11-501.2(a)(5)(West 1996).  The Vehicle Code, however, does not define the term "blood;" neither does the Criminal Code of 1961 (720 ILCS 5/1-1 
et seq
. (West 1996)).  That notwithstanding, whole blood has been held to be the "standard unit required by the [Vehicle Code]" (
People v. Niemiro
, 256 Ill. App. 3d 904, 914 n.2, 628 N.E.2d 212 (1993)), and we agree.

By the same token, we do not believe that the term "blood," as used within section 11-501.2(a)(5), can also mean blood serum.  First, section 11-501.2(a)(5) does not define "alcohol concentration" in terms of blood serum.  625 ILCS 5/11-501.2(a)(5)(West 1996).  Second, whole blood and blood serum are not fungible.  Blood serum is, in fact, a constituent part of whole blood; specifically, it is that which remains after the red and white blood cells and other particulate matter have been removed.  Stedman's Medical Dictionary 1278 (24th ed. 1984).  Third, that lack of red and white blood cells and other particulate matter serves to increase the relative percentage of water within blood serum which, because alcohol has an affinity for water, results in higher alcohol concentration levels in blood serum than in whole blood.  
Kempe v. Dometic Corp.
, 866 F. Supp. 817, 820 (D.Del. 1994), citing James F. Mosher, 2 Liquor Liability Law §22.04 (1994); Roehrenbeck, Carol A. and Raymond W. Russell, 
Blood is Thicker Than Water
, 8 Crim.Just. 14, 15 (1993).  As such, it would be illogical to conclude that section 11-501.2(a)(5) may be understood to have defined "alcohol concentration" in terms of both whole blood and blood serum.  Furthermore, to the extent section 11-501.2(a)(5) may be said to be ambiguous, it must be strictly construed in favor of defendant.  
People v. Woodard
, 175 Ill. 2d 435, 444, 677 N.E.2d 935 (1997).  In this instance, that would require a construction of section 11-501.2(a)(5) which did not include blood serum.

Simply put, section 11-501.2(a)(5) of the Vehicle Code defines "alcohol concentration" in terms of whole blood, and whole blood only.  See 
Niemiro
, 256 Ill. App. 3d at 914 n.2; see also 625 ILCS 5/11-501.2(a)(5)(West 1996); accord 
Florida Tile Industries v. Dozier
, 561 So.2d 654, 655 (Fla.App. 1990), 
overruled on other grounds
, 
Domino's Pizza v. Gibson
, 668 So.2d 593 (Fla. 1996).

A
.

The first in defendant's "series of errors" concerns the testimony of Dr. Rosenfeld that defendant's blood serum-alcohol concentration level of 0.114 meant he was legally intoxicated at the time of the accident.  Defendant argues that such testimony was improper not only because it was a legal conclusion, but also because that legal conclusion was "so utterly wrong."

Defendant did not object to Dr. Rosenfeld's testimony at trial, nor did he do so within his post-trial motion.  Both were necessary to preserve that issue for appeal.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988).  Indeed, failure to do so generally waives an issue for purposes of appellate review.  
People v. Vargas
, 174 Ill. 2d 355, 362, 673 N.E.2d 1037 (1996).  Nevertheless, not all unpreserved issues are irredeemably waived, for Supreme Court Rule 615(a) provides that plain errors affecting substantial rights may be reviewed on appeal, although not properly preserved.  134 Ill. 2d R. 615(a).  However, in appeals from criminal proceedings, review pursuant to plain error is limited to two circumstances; one, where the evidence is closely-balanced, and two, where the unpreserved error is of such magnitude that a substantial risk exists that a defendant was denied a fair trial.  
Vargas
, 174 Ill. 2d at 363.

Here, the evidence of defendant's legal intoxication was closely-balanced.  It included the results of three alcohol concentration tests; one whole blood test which reported an alcohol concentration level of 0.079, and two blood serum tests, one of which when converted into a whole blood equivalent, indicated an alcohol concentration level of 0.0982.  It also included evidence of defendant's erratic driving as well as an odor of alcohol around his person.  We cannot say this evidence overwhelmingly established defendant's legal intoxication.  Accordingly, we believe review of this contention under the plain error doctrine is appropriate.

At trial, Dr. Rosenfeld testified that defendant's blood serum-alcohol concentration level was 0.114 which, according to her, meant he was legally intoxicated at the time of the collision.   Dr. Rosenfeld, however, was in error.  That alcohol concentration level did not establish defendant's legal intoxication, nor did it otherwise allow for such a presumption pursuant to section 11-501.2(b).  Indeed, when converted to a whole blood equivalent using a conversion factor of 1.16, that alcohol concentration level falls to 0.0982, which is clearly less 0.10, and therefore not a basis upon which to conclude nor presume legal intoxication.
(footnote: 2)  See 625 ILCS 5/11-501.2(b)(2)(West 1996).  Dr. Rosenfeld's testimony was therefore in error.

B.

The second in defendant's "series of errors" concerns the circuit court's refusal to instruct the jury as to the distinction between whole blood and blood serum for purposes of determining his "alcohol concentration."  Defendant argues that such an instruction was necessary to "straighten out the damage done by Dr. Rosenfeld's mistaken testimony."

During the conference on jury instructions, defendant requested an instruction specifically defining "alcohol concentration" in terms of whole blood.  Defendant's request was denied.  As a result, the jury was only instructed that "[t]he term 'alcohol concentration' means either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath."  

 As we have previously determined, section 11-501.2(a)(5) of the Vehicle Code defines "alcohol concentration" in terms of whole blood, not blood serum.  See 
Niemiro
, 256 Ill. App. 3d at 914 n.2; see also 625 ILCS 5/11-501.2(a)(5)(West 1996); accord 
Florida Tile Industries
, 561 So.2d at 655.
  As such, a trier of fact may not employ any of the legal presumptions provided within section 11-501.2(b) on the basis of a defendant's blood serum-alcohol concentration level; a trier of fact may do so only on the basis of a defendant's whole blood-alcohol concentration level.  Evidence of a defendant's whole blood-alcohol concentration level may stem from actual whole blood-alcohol concentration test results or from blood serum-alcohol concentration test results converted into whole blood equivalents.  
Domino's Pizza
, 668 So.2d at 596.  In either event, a trier of fact may only employ a presumption provided within section 11-501.2(b) on the basis of a defendant's whole blood-alcohol concentration level.  Allowing a trier of fact to employ such a presumption on the basis of a defendant's unconverted blood serum-alcohol concentration level is error.

Here, the jury was not instructed it could not employ a presumption provided within section 11-501.2(b) on the basis of defendant's unconverted blood serum-alcohol concentration levels.  It was therefore allowed to employ a presumption of defendant's legal intoxication on the basis of such evidence.  That was error.

In 
People v. Menssen
, 263 Ill. App. 3d 946, 636 N.E.2d 1101 (1994), this court held that evidence of a defendant's blood serum-alcohol concentration level was admissible under section 11-501.2(a) of the Vehicle Code.  263 Ill. App. 3d at 953.  We continue to adhere to that interpretation of section 11-501.2(a).  Accord 
Domino's Pizza
, 668 So.2d at 595; 
Michie v. State
, 632 So.2d 1106, 1108 (Fla.App. 1994).  However, we specifically hold that such unconverted evidence may not be considered by a trier of fact in determining whether a presumption provided within section 11-501.2(b) shall be employed; only evidence of a defendant's whole blood-alcohol concentration level may be considered for such a purpose.

C.

The third and last in defendant's "series of errors" concerns the State's closing arguments to the jury.  Defendant argues the State misstated the law; specifically, that defendant's legal intoxication could be presumed on the basis of blood serum-alcohol concentration evidence.
(footnote: 3)
Neither defendant nor the State argued the jury should only consider evidence of defendant's whole blood-alcohol concentration.  In fact, the State argued just the opposite; it argued that defendant's blood serum-alcohol concentration levels could be used to presume his legal intoxication at the time of the collision.

Those arguments were clearly in error.

Moreover, the foregoing "series of errors" served to deny defendant a fair trial; they were not harmless.  See 
Connecticut v. Johnson
, 460 U.S. 73, 85-88, 74 L. Ed. 2d 823, 103 S. Ct. 969 (1983).

II.

Next, defendant contends that the circuit court erred in allowing LeDonne-Draka to testify on rebuttal that the results of defendant's three alcohol concentration tests were not incompatible.

We decline to address this contention, for where, as here, a judgment is reversed on one ground, other grounds for reversal are not ordinarily considered, unless they can be expected to arise anew on retrial.  
People v. Henderson
, 215 Ill. App. 3d 24, 27, 574 N.E.2d 268 (1991); 
People v. Scott
, 47 Ill. App. 3d 680, 682, 365 N.E.2d 108 (1977).  Having had a jury impliedly reject Moriarty's incompatibility testimony, we do not expect defendant to advance such a defense again on retrial.  Neither, in turn, do we expect the State to proffer testimony as to the compatibility of defendant's three alcohol concentration test results where defendant does not first raise such a defense.

III
.

Defendant finally contends that his conviction for aggravated driving under the influence of alcohol as it relates to the death of Florence McCaffray cannot stand, for it violates the "one act-one crime" rule.  We agree.

In 
People v. Rodriguez
, 169 Ill. 2d 183, 661 N.E.2d 305 (1996), our supreme court reaffirmed the "one act-one crime" rule previously announced in 
People v. King
, 66 Ill. 2d 551, 363 N.E.2d 838 (1977).  169 Ill. 2d at 186-87.  That rule provides that multiple convictions are improper if based upon precisely the same physical act.  
Rodriguez
, 169 Ill. 2d at 186.  That rule further provides that multiple convictions are improper, even where there are multiple acts, if any of those convictions involve lesser-included offenses.  
Rodriguez
, 169 Ill. 2d at 186.

A lesser-included offense "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the [greater] offense charged."  720 ILCS 5/2-9(a)(West 1996).  Stated otherwise, "[a] lesser[-]included offense arises when the greater offense includes every element of the lesser offense plus one or more elements."  
People v. Yarbrough
, 269 Ill. App. 3d 96, 103, 645 N.E.2d 423 (1994).  The existence of a lesser-included offense is to be determined by the facts alleged in the charging instrument; that is to say, an offense is a lesser-included offense if it is described within the greater offense.  
People v. Novak
, 163 Ill. 2d 93, 107, 643 N.E.2d 762 (1994); 
People v. Bryant
, 113 Ill. 2d 497, 503, 499 N.E.2d 413 (1986); 
People v. Wyns
, 103 Ill. App. 3d 273, 276, 431 N.E.2d 38 (1982).

Here, defendant's convictions for reckless homicide and aggravated driving under the influence of alcohol were based upon multiple acts.  Within the reckless homicide counts, the State alleged that, while under the influence of alcohol, defendant drove his vehicle into the wrong lane of traffic and struck another vehicle, killing Florence McCaffray.  Within the count of aggravated driving under the influence of alcohol relating to the death of Florence McCaffray, the State alleged that defendant, while under the influence of alcohol, was involved in an automobile accident which killed Florence McCaffray.  Clearly, the latter charge of aggravated driving under the influence of alcohol is a lesser-included offense within that of reckless homicide, as alleged.  Accordingly, defendant may not be convicted of both on retrial.

CONCLUSION

For the aforementioned reasons, we reverse defendant's convictions and remand this matter for a new trial.

Reversed and remanded.

FOOTNOTES
1:
As explained by Jean Wojtanek, laboratory manager at Gottlieb, whole blood is blood that has not been separated into its constituent components; blood serum, on the other hand, is one of those constituent components.

2:
Conversion factors vary.  This is so because alcohol concentration ratios between blood serum and whole blood vary among individuals.  Roehrenbeck and Russell, 8 Crim.Just. at 18.  Indeed, each individual has a particular conversion factor.  
Kempe
, 866 F. Supp. at 820, citing Mosher, 2 Liquor Liability Law §22.04; Roehrenbeck and Russell, 8 Crim.Just. at 18.  Use of 1.16 as a conversion factor is arbitrary; it is simply the average of a range of such factors used in connection with the many different alcohol concentration ratios found within the public.  
Kempe
, 866 F. Supp. at 820, citing Mosher, 2 Liquor Liability Law §22.04; Roehrenbeck and Russell, 8 Crim.Just. at 18.

Here, the parties both employed 1.16 as the appropriate conversion factor.

3:
Defendant did not object to the foregoing arguments at trial, nor did he do so within his post-trial motion.  Nevertheless, we, for the reasons previously discussed, believe that review of this contention under the plain error doctrine is appropriate.