THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HARRY BOWENS, Defendant-Appellant.

First District (3rd Division)    No. 1—98—0427

Opinion filed September 1, 1999.

Michael J. Pelletier and Michael C. Bennett, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Following a bench trial in July 1997, defendant, Harry Bowens, was convicted of attempt (first degree murder) (count I of the indictments) (720 ILCS 5/8—4(a), 9—1 (West 1992)) and armed violence predicated upon the offense of aggravated battery causing permanent disability (counts IV and VII of the indictments) (720 ILCS 5/33A—1, 12—4(a), 12—3 (West 1992)), in connection with the stabbing and beating of John Dijiulio on September 3, 1995. Defendant was sentenced in accordance with the "truth-in-sentencing" law codified in section 3—6—3(a)(2)(ii) of the Unified Code of Corrections (Code) (730 ILCS 5/3—6—3(a)(2)(ii) (West 1996)) and received concurrent terms of 30 years' imprisonment for both offenses. On appeal, defendant argues he should not be subject to the provisions of the "truth-in-sentencing" law because its enacting legislation, Public Act 89—404 (Pub. Act 89—404, eff. August 20, 1995), violates the single-subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)) and therefore is unconstitutional. The State, in addition to defending the validity of Public Act 89—404, contends the case must be remanded for resentencing because the trial court erred by imposing concurrent sentences when the imposition of consecutive sentences was mandated by the Code.

In his reply brief, defendant did not respond to the State's contention that a remand for resentencing is necessary, but simply addressed the State's position concerning the validity of the "truth-in-sentencing" law. This court ordered defendant to respond to the

State's resentencing argument. We further advised defendant to address the issue of whether his convictions were carved from the same physical act in violation of the "one-act-one-crime" rule announced in *People v. King*, 66 Ill. 2d 551, 363 N.E.2d 838 (1977). Defendant filed a supplemental reply brief discussing the foregoing issues, and the State followed by filing a surreply brief.

■ During the pendency of this appeal, the Illinois Supreme Court in *People v. Reedy*, 186 Ill. 2d 1, 18 (1999), found the "truth-in-sentencing" law as enacted by Public Act 89—404 unconstitutional. The court noted that our General Assembly passed amendatory legislation, Public Act 90—592 (Pub. Act 90—592, eff. June 19, 1998), which deleted and recodified the truth-in-sentencing law. The court specifically found Public Act 90—592 cured the effect of the earlier act's invalidation. *Reedy*, 186 Ill. 2d at 17. The court, however, held the amendatory legislation was intended to apply prospectively and would cover offenses committed only on or after June 19, 1998. *Reedy*, 186 Ill. 2d at 17-18.

In this case, defendant's unlawful conduct occurred in September 1995. Defendant is therefore not subject to the reenacted truth-in-sentencing provisions. Accordingly, we modify the trial court's sentencing mittimus to reflect defendant's eligibility for day-to-day good-time credit as provided in section 3—6—3(a)(2) of the Code prior to the enactment of Public Act 89—404. See 730 ILCS 5/3—6—3(a)(2) (West 1994).

We now consider whether the entry of multiple convictions against defendant were proper. The State's evidence at trial established that in the early morning hours of September 3, 1995, defendant and the victim were sitting on a porch sharing a beer. At some point, the victim stood up and walked away. Defendant approached the victim from behind and suddenly stabbed him in the throat. Defendant then pushed the victim to the ground and repeatedly kicked him in the area of his head and neck. Defendant then fled the scene. As a result of the attack, the victim is paralyzed from the chest down.

■ Defendant argues his conviction for armed violence should be vacated because it was based on the same physical act as his conviction for attempted murder in contravention of the principles enunciated in *King*. In *King*, our supreme court considered the propriety of multiple convictions for offenses committed during the same transaction, and held:

"Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by defini-

tion, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." *King*, 66 Ill. 2d at 566, 363 N.E.2d at 844-45.

■ Defendant asserts his stabbing and subsequent kicking of the victim represented a single physical act under *King*. In support of this proposition, defendant cites *People v. Ellis*, 143 Ill. App. 3d 892, 493 N.E.2d 739 (1986), which utilized a series of factors to determine whether the defendant's conduct in that particular case constituted separate physical acts or merely distinct parts of one act. These factors included: (1) the prosecutorial intent, shown by the wording of the charging instruments, as reflective upon whether the State attempted to differentiate between the conduct supporting the charges involved; (2) whether the defendant's acts were interposed by an intervening event; (3) the time interval between the successive parts of the defendant's conduct; (4) the identity of the victim; (5) the similarity of the acts performed; and (6) whether the conduct occurred at the same location. *Ellis*, 143 Ill. App. 3d at 896-97, 493 N.E.2d at 742. A number of other appellate court cases have relied on the foregoing factors when determining if a defendant's conduct represented a single physical act for purposes of *King*. See *People v. Moss*, 274 Ill. App. 3d 77, 83, 654 N.E.2d 248, 252 (1995); *People v. Zarate*, 264 Ill. App. 3d 667, 677, 637 N.E.2d 1044, 1051-52 (1994); *People v. Cobern*, 236 Ill. App. 3d 300, 303, 603 N.E.2d 693, 695 (1992); *People v. Guzman*, 208 Ill. App. 3d 525, 535, 567 N.E.2d 500, 507-08 (1990); *People v. Crum*, 183 Ill. App. 3d 473, 490, 539 N.E.2d 196, 207 (1989); *People v. Baity*, 125 Ill. App. 3d 50, 51-53, 465 N.E.2d 622, 623-25 (1984).

Defendant urges this court to apply the above factors in this case to find that his convictions were improperly based on the same physical act. We decline to do so. In *People v. Rodriguez*, 169 Ill. 2d 183, 661 N.E.2d 305 (1996), the supreme court recently revisited the *King* decision and specifically referenced the use of the six-part test traditionally employed by the appellate courts. In *Rodriguez*, the court enunciated a two-part approach for applying its ruling in *King*. First, the court must determine whether the defendant's conduct consisted of separate acts or a single physical act. If multiple convictions are predicated on precisely the same physical act, then the convictions are

improper. If the court finds the defendant committed separate acts each sufficient to support multiple convictions, it must then decide whether any of the offenses are lesser included offenses. If so, multiple convictions are improper; if not, then multiple convictions may be entered. *Rodriguez*, 169 Ill. 2d at 186, 661 N.E.2d at 306-07.

■ The *Rodriguez* court then noted that the appellate court in that case used the six-part test to determine whether the accused's conduct consisted of a single act under *King*. *Rodriguez*, 169 Ill. 2d at 188, 661 N.E.2d at 307. Without addressing the merits of this test, and while not explicitly adopting or rejecting its application, the court cautioned that "a court must not lose sight of the forest for the trees." *Rodriguez*, 169 Ill. 2d at 188, 661 N.E.2d at 307. The court followed by stressing that "[t]he definition of [the term] 'act' under the *King* doctrine remains simply what [the] court stated in *King*: 'any overt or outward manifestation which will support a different offense.' " *Rodriguez*, 169 Ill. 2d at 188, 661 N.E.2d at 307, quoting *King*, 66 Ill. 2d at 566, 363 N.E.2d at 845.

Since the *Rodriguez* decision neither expressly endorses nor rejects the six-factor test fashioned by the appellate courts, the supreme court's position regarding the test's application in cases like the instant matter remains unclear. Notwithstanding, a clear import of the supreme court's decision, particularly in light of its cautionary note, is that the six-part test should not be the focal point of the court's analysis. Instead, a court must carefully examine the nature of the particular defendant's conduct as shown by the evidentiary record and then determine whether that conduct can be broken down into separate parts, *i.e.*, distinct and identifiable "overt or outward manifestations," that would, by themselves, support multiple convictions.

The court's recent decision in *People v. Harris*, 182 Ill. 2d 114, 695 N.E.2d 447 (1998), illustrates this approach. There, the accused, who was convicted of first degree murder and attempted armed robbery, argued his convictions were improperly based on the same physical act, namely, his shooting of the victim. The evidence showed the accused and several other persons were driving in a Mercedes discussing carjackings immediately prior to the victim's murder. After the Mercedes pulled into a parking lot where the victim was sitting in his car, one of the vehicle's occupants, Antoine Moore, exited and approached the victim's car. Moore attempted to open the victim's door, and when the door did not open, Moore ordered the victim out. The victim refused, and Moore returned to the Mercedes. At that point the accused exited the Mercedes and fired a shot at the victim's car window, shattering it. The accused then fired a second shot, which fatally struck the victim in the head.

In rejecting the accused's contention that he was improperly convicted of multiple offenses, the court noted the evidence showed that the accused fired two gunshots at the victim's car. The first shot shattered the car window but did not strike the victim, while the second shot struck the victim in the head, killing him. The court found that while the accused's conviction for first degree murder must be based on the second, fatal shot, his conviction for attempted armed robbery could have been based on the first shot. *Harris*, 182 Ill. 2d at 134, 695 N.E.2d at 457. The court held that the accused's convictions were proper because "discrete physical acts [underlay] each offense." *Harris*, 182 Ill. 2d at 134, 695 N.E.2d at 457. Notably, the *Harris* court neither mentioned the six-part test nor applied any of its factors in determining that the accused's conduct consisted of multiple acts. Instead, the court simply focused on whether the accused's "manifestations," *i.e.*, the acts of firing two gunshots, were sufficiently separate to support both convictions. See also *People v. Melton*, 282 Ill. App. 3d 408, 421-22, 667 N.E.2d 1371, 1381 (1996) (being "[m]indful of the supreme court's cautionary note in *Rodriquez*," the court declined to apply the six-part test and instead elected to focus solely on the defendant's particular conduct to conclude multiple convictions were improper); but see *People v. Stokes*, 281 Ill. App. 3d 972, 981, 667 N.E.2d 600, 607 (1996) (despite recognizing the caution with which the *Rodriguez* court approached the application of the six-part test, the court considered two of the test's factors in addition to the nature of the accused's conduct in finding multiple convictions appropriate).

As the *Harris* case demonstrates, multiple convictions are appropriate where the defendant performs separate acts that would support different offenses. See also *People v. Dixon*, 91 Ill. 2d 346, 355-56, 438 N.E.2d 180, 195 (1982) (holding that numerous strikes against the victim with a broom or mop handle by the defendant and codefendant were, even though closely related, not one physical act but, rather, separate acts sufficient to support the defendant's convictions for aggravated battery and mob action); *People v. Miller*, 284 Ill. App. 3d 16, 26-27, 671 N.E.2d 376, 384 (1996) (affirming the defendant's multiple convictions on the basis that the defendant's stabbing of the victim five times within brief period of time constituted separate and distinct acts; "[o]ne stab wound can support the attempted murder conviction and others can support the aggravated battery conviction"); *People v. Mayes*, 257 Ill. App. 3d 137, 156, 630 N.E.2d 878, 889-890 (1993) (ruling the defendant's convictions for aggravated battery and attempted murder were proper where the defendant's stabbing of the victim three times in the back and once in the forearm during struggle represented multiple acts); *People v. Partee*, 157 Ill. App. 3d 231, 270,

511 N.E.2d 1165, 1191 (1987) (ruling that the defendant's assault on the victim that resulted in lacerations to the victim's face and neck and of the ear canal, and a puncture wound to the neck, constituted multiple acts sufficient to support convictions on three counts of aggravated battery); *People v. Pressley*, 160 Ill. App. 3d 858, 866, 513 N.E.2d 921, 927 (1987) (holding multiple convictions for attempted murder and armed violence were proper where defendant stabbed the victim five times; "[o]ne stab wound alone can support an attempted murder charge, while the other four stab wounds clearly comprise an armed violence charge"); but see *People v. Burrage*, 269 Ill. App. 3d 67, 72, 645 N.E.2d 455, 459 (1994) (ruling the defendant was improperly convicted of both attempted first degree murder and armed violence where the defendant's act of shooting at the victim three times in succession consisted of a single act); *Guzman*, 208 Ill. App. 3d at 535, 567 N.E.2d at 508 (applying six-factor test to find rapid firing of six consecutive gunshots by defendant at victim constituted a single physical act, holding that multiple convictions for attempted murder and three counts for aggravated battery were error); *Crum*, 183 Ill. App. 3d at 490, 539 N.E.2d at 207 (applying six-part test to find that two gunshots fired at the victim by the accused represented one physical act and therefore was insufficient to support convictions for both murder and armed violence); *Ellis*, 143 Ill. App. 3d at 897-98, 493 N.E.2d at 742-43 (applying six-part test and holding the defendant's striking of the victim in the back of the head and neck and then in the face consisted of a single act precluding multiple convictions for aggravated battery); *People v. Hope*, 142 Ill. App. 3d 171, 175-76, 491 N.E.2d 785, 788-89 (1986) (applying six-part test to find that defendant's stabbing of the victim four times in rapid succession represented one physical act, and thus the evidence could not support multiple convictions for attempted murder and armed violence); *Baity*, 125 Ill. App. 3d at 53, 465 N.E.2d at 53-54 (applying the six-factor test and finding the defendant's act in shooting his wife three times in rapid succession constituted a single physical act warranting only one conviction).

■ Applying *King* and its progeny to the present case, we conclude defendant's convictions for attempted first degree murder and armed violence were based on separate acts. As charged in the State's indictments, a person commits the offense of attempted first degree murder when, with the intent to kill an individual without legal justification, he does an act that constitutes a substantial step toward that end. 720 ILCS 5/8—4(a), 9—1 (West 1992). A person commits the offense of armed violence predicated on aggravated battery when, while armed with a dangerous weapon, he intentionally or knowingly and without

legal justification causes bodily harm to another resulting, *inter alia,* in permanent disability. 720 ILCS 5/33A—1, 12—4(a), 12—3 (West 1992).

Here, defendant's stabbing of the victim in the throat was one overt manifestation that may support his conviction for attempted murder, and defendant's repeated kicking of the victim's head and neck area while in possession of the stabbing instrument was another overt manifestation that may support his conviction for armed violence based on the offense of aggravated battery. Each conviction may similarly be based on the converse actions. As in *Harris,* "discrete physical acts underlie each offense" in this case.

Our finding that defendant's unlawful conduct constituted separate physical acts, however, does not necessitate a finding that multiple convictions are proper in this case. The second step in the *King* analysis is to determine whether any of the offenses involved is a lesser included offense of another. *Rodriguez,* 169 Ill. 2d at 186, 661 N.E.2d at 306-07.

■ An "included offense" is defined in pertinent part by section 2—9 of the Criminal Code of 1961 as an offense that "[i]s established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged." 720 ILCS 5/2—9(a) (West 1996). As our supreme court has recognized, section 2—9 unfortunately "does not specify what source to examine in deciding whether a particular offense is a lesser included offense of another." *People v. Novak,* 163 Ill. 2d 93, 106, 643 N.E.2d 762, 769 (1994).

In identifying lesser included offenses under *King,* the courts have generally followed either an "abstract elements" approach (see *People v. Priest,* 297 Ill. App. 3d 797, 804, 698 N.E.2d 223, 228 (1998); *People v. Moore,* 301 Ill. App. 3d 728, 733, 704 N.E.2d 80, 84 (1998); *People v. Miller,* 284 Ill. App. 3d 16, 27, 671 N.E.2d 376, 385 (1996); *People v. Yarbrough,* 269 Ill. App. 3d 96, 103, 645 N.E.2d 423, 428 (1994); *People v. Mayes,* 257 Ill. App. 3d 137, 155, 630 N.E.2d 878, 890 (1993)), or a "charging instrument" approach (see *People v. Bussan,* 306 Ill. App. 3d 836, 839-40 (1999); *People v. Rhoden,* 299 Ill. App. 3d 951, 963, 702 N.E.2d 209, 217 (1998); *People v. Green,* 294 Ill. App. 3d 139, 149, 689 N.E.2d 385, 392 (1997); *People v. Burrage,* 269 Ill. App. 3d 67, 72-73, 645 N.E.2d 455, 460 (1994); *People v. Stanley,* 246 Ill. App. 3d 393, 402-03, 615 N.E.2d 1352, 1360 (1993)).

The "abstract elements" approach compares the statutory elements of the greater offense to those of the lesser offense. " 'If all of the elements of the lesser offense are included within the greater and the lesser does not have any element not included in the greater, the

lesser is deemed to be a lesser included offense.' " *Novak*, 163 Ill. 2d at 106, 643 N.E.2d at 769, quoting *People v. Wys*, 103 Ill. App. 3d 273, 275-76, 431 N.E.2d 38 (1982).

Under the "charging instrument" approach, the factual allegations contained in the State's charges are examined. According to this approach, an offense will be deemed a lesser included offense if it is described by the charging instrument. *Novak*, 163 Ill. 2d at 107, 643 N.E.2d at 769; *Green*, 294 Ill. App. 3d at 149, 689 N.E.2d at 392. At a minimum, the instrument charging the greater offense must set out the main outline of the lesser offense. *People v. Hamilton*, 179 Ill. 2d 319, 326-27, 688 N.E.2d 1166, 1170 (1997); see also *Novak*, 163 Ill. 2d at 107, 643 N.E.2d at 770, quoting *People v. Bryant*, 113 Ill. 2d 497, 505, 499 N.E.2d 413 (1986) ("'[t]he 'lesser offense must have a broad foundation in the instrument charging the greater,' or at least 'set out the main outline of the lesser offense' ").

Our supreme court has not expressly ruled that one particular approach should be followed when identifying lesser included offenses for purposes of *King*. Nevertheless, a review of applicable case law reveals that the court favors the "charging instrument" approach in such instances. For instance, in *Rodriguez*, the court looked to the allegations contained in the State's indictments in considering whether the offense of home invasion was a lesser included offense of aggravated criminal sexual assault under *King*. *Rodriguez*, 169 Ill. 2d at 190, 661 N.E.2d at 308. Significantly, the court cited its earlier decision in *Novak*, where it adopted the "charging instrument" approach over the "abstract element" test in a case where the accused sought to have the jury instructed on a lesser offense than that which was charged in the indictment. *Novak*, 163 Ill. 2d at 112-13, 643 N.E.2d at 772. Applying the "charging instrument" approach, the *Rodriguez* court found that home invasion was not a lesser included offense since it was not sufficiently described by the aggravated criminal sexual assault charge. *Rodriguez*, 169 Ill. 2d at 190, 661 N.E.2d at 308.

The court's recent decision in *People v. McLaurin*, 184 Ill. 2d 58, 703 N.E.2d 11 (1998), further indicates that the "charging instrument" approach should be followed. In *McLaurin*, the defendant claimed in part that his conviction for home invasion should have been vacated as a lesser included offense of his conviction for intentional murder because "the murder resulted from the same physical act, that is, starting a fire, that was relied upon to charge him with and to prove the offense of home invasion." 184 Ill. 2d at 103, 703 N.E.2d at 32. In addressing the defendant's challenge, the court reaffirmed its preference for the "charging instrument" approach to identify lesser included offenses, and after considering the wording of

the State's charges, determined that home invasion was not a lesser included offense of intentional murder as alleged. 184 Ill. 2d at 104-05, 703 N.E.2d at 33.

Following the supreme court's lead in the foregoing decisions, we hold the "charging instrument" approach should be applied when identifying lesser included offenses under *King*. See also *Bussan*, 306 Ill. App. 3d at 839-40 (holding *McLaurin* mandates that the "charging instrument" approach be applied when determining the existence of lesser offenses under the one-act-one-crime rule).

We recognize that a different conclusion was reached by the Fourth District Appellate Court in *People v. Priest*, 297 Ill. App. 3d 797, 698 N.E.2d 223 (1998). There, the court was confronted with the same question presented in this case, namely, whether the "charging instrument" approach is to be applied or whether the *King* decision requires a different approach to be used. The court initially noted the use by the various courts of the "charging instrument" approach to identify lesser included offenses, particularly in cases where a party seeks a jury instruction on a lesser crime than the one charged. *Priest*, 297 Ill. App. 3d at 803, 698 N.E.2d at 227. The court, however, held the commonly accorded definition of lesser included offenses must be followed when applying *King*. *Priest*, 297 Ill. App. 3d at 803, 698 N.E.2d at 227. Under this definition, a lesser included offense "is one that does not have any element not included in the greater offense." *Priest*, 297 Ill. App. 3d at 803, 698 N.E.2d at 227, citing *People v. Jones*, 149 Ill. 2d 288, 292-93, 595 N.E.2d at 1071, 1073 (1992), and *Green*, 294 Ill. App. 3d at 149, 689 N.E.2d at 392. A comparison of this definition with the "abstract elements" approach reveals that they are essentially a statement of the same principle. *Cf. Novak*, 163 Ill. 2d at 106, 643 N.E.2d at 769 (statement of "abstract elements" test), with *Jones*, 149 Ill. 2d at 293, 595 N.E.2d at 1073 (statement of definition of lesser included offense). According to the court in *Priest*, "if changes are to be made in the commonly accepted definition of lesser included offenses when applying the *King* rules, those changes should be made by the supreme court." *Priest*, 297 Ill. App. 3d at 803, 698 N.E.2d at 227.

Unlike *Priest*, we do not believe the commonly accepted definition of lesser included offenses controls our analysis under *King*. As discussed above, recent decisions by our supreme court indicate that the "charging instrument" approach should be applied in such cases. Notably, *Priest* overlooks the supreme court's application of this approach in *Rodriquez*. Furthermore, although both *Jones* and *Green* cited the commonly accepted definition of lesser included offenses, the courts in those cases did not rely on that definition to identify lesser offenses. Rather, the courts applied the "charging instrument" approach in their analyses.

■ Employing the "charging instrument" approach here, we conclude that armed violence, as charged by the State, is a lesser included offense of attempted murder. Count I of the indictments charges defendant with attempted murder in that "he without legal justification [and] with intent to commit the offense of first degree murder intentionally and knowingly attempted to kill [the victim] by cutting [the victim] on or about the throat area with a knife and kicked [the victim] repeatedly about the head, face and neck area." A reading of counts IV and V together shows that defendant was charged with the offense of armed violence in that "while armed with a dangerous weapon, to wit: a knife, [he] committed the offense of aggravated battery" by "kicking [the victim] repeatedly about the head, face and neck area and stabbing [the victim] in the neck with a knife *** without legal justification" and with the intent and knowledge that his actions would cause "bodily harm and permanent disability" to the victim.

As the foregoing allegations demonstrate, the attempted murder charge sufficiently describes as a lesser crime the offense of armed violence predicated on aggravated battery. The indictment charging attempted murder alleges defendant, while armed with a knife, stabbed the victim in the throat and repeatedly kicked the victim about the head and neck. Certainly, the State's charge of attempted murder sets forth the main outline of armed violence. To allege the offense of armed violence, the attempted murder charge need only be amended to substitute the asserted object of defendant's conduct, that is, his attempt to kill with his intent or knowledge of causing bodily harm and permanent disability to the victim. Indeed, the fact the victim here would have suffered bodily injury as a result of defendant's unlawful acts is implicit in the attempt murder charge. See *Byrant*, 113 Ill. 2d at 505, 499 N.E.2d at 416-17 (it is sufficient under the "charging instrument" approach that the allegations of the greater offense implicitly set forth the elements of the lesser crime).

When multiple convictions cannot stand under *King*, a sentence should be imposed on the more serious offense, and the conviction on the less serious offense should be vacated. *People v. Garcia*, 179 Ill. 2d 55, 71, 688 N.E.2d 57, 64 (1997); *Burrage*, 269 Ill. App. 3d at 73, 645 N.E.2d at 460. Although both attempted murder and armed violence are Class X felonies (see 720 ILCS 5/8—4(c)(1), 33A—1(b) (West 1996)), attempted murder is considered the more serious offense since it is a specific intent crime. *Burrage*, 269 Ill. App. 3d at 73, 645 N.E.2d at 460; *People v. Massey*, 219 Ill. App. 3d 909, 913, 579 N.E.2d 1259, 1262 (1991); *People v. Edwards*, 167 Ill. App. 3d 324, 337, 521 N.E.2d 185, 194 (1988). We therefore vacate defendant's conviction and

sentence for armed violence. Since we vacate defendant's armed violence conviction, we need not address the State's contention that consecutive sentences are required under the Code.

For the foregoing reasons, we affirm defendant's conviction for attempted first degree murder, but we vacate his conviction and sentence for armed violence. We further modify the sentencing mittimus to reflect defendant's eligibility to receive good-time credit while incarcerated.

Affirmed in part, reversed in part, and modified.

BURKE and McBRIDE, JJ., concur.